## DAVIS *v.* HOLBROOK.

Betting on elections being, under the laws of this State, a criminal offence, (stat. 16 March, 1839,) no action will lie to recover from a stake-holder an amount deposited with him as a bet. *Per Curiam:* A party will not be heard who asks the court to relieve him from the consequences of having violated the law.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Parker* and *R. Hunt*, for the appellant. *Durant*, for the defendant.

The judgment of the court was pronounced by

EUSTIS, C. J. This is an action to recover from a stake-holder the sum of $500, which had been deposited with him as a bet upon the result of the vote of Louisiana upon the late presidential election. The judge of the Commercial Court, from which the appeal is taken, thus in substance states the case:

The facts appear to be that, on the 2d of August, 1844, the plaintiff, *E. A. Davis*, made a bet with *A. H. Hays* of the sum of $500, dependent on the question whether the electoral vote of Louisiana should be given for *Mr. Clay* or *Mr. Polk*. In pursuance of this agreement the parties deposited with private bankers the sum of $1,000, and took a certificate of deposit payable to them jointly. Each of them endorsed the certificate, and placed it in an envelope, on the outside of which was written: " Not to be opened until the result of the presidential election in Louisiana is ascertained." On the inside of the envelope was written: " If the vote of Louisiana is cast for Henry Clay, the endorsed certificate of deposit for one thousand dollars, payable to our joint order endorsed thereon, is to be delivered to *E. A. Davis*, one of the undersigned. Should the vote of Louisiana be cast for *James K. Polk*, then the certificate is to be delivered to *A. H. Hays*, whose name is also hereunto subscribed. *E. A. Davis, A. H. Hays.*"

The certificate and envelope were placed in the hands of the defendant *A. M. Holbrook*, as stake-holder. On the 12th of November, 1844, after the result of the election in the city and adjoining parishes was ascertained, but before that of the election in the State could be known, *W. H. McCardle*, who had been the agent of *Davis* in making the bet, and had furnished the money on his behalf, addressed a letter to *Holbrook* instructing him not to give up the certificate of deposit for $1,000, placed in his hands by *McCardle*, without further instructions from *Davis*. The electoral vote was cast for *Mr. Polk*, and, notwithstanding the notice given by *McCardle* for *Davis*, *Holbrook* delivered up the certificate to *Hays*. The present action is brought to recover from the defendant the amount of the stake put up by the plaintiff—the sum of $500.

The plaintiff states as his reason for attempting to stop the payment of the bet, that frauds were practiced in the election in the parish of Plaquemine, which

changed the result of the vote of the State; but no evidence in reference to this matter was offered on the trial, and the right to recover from the defendant rests solely on the notice given to the defendant not to pay over the stake.

The judge of the Commercial Court decided the case in favor of the defendant on the broad principle that, no party who has violated the law ought to receive the assistance of a court of justice to relieve him from the consequences of his unlawful conduct, the law leaving such parties where it finds them. There have been other grounds of defence taken in argument, but as this question is of importance, and has been fully discussed at bar, we proceed to decide it.

The right of the party making a bet to recover the money deposited with a stake-holder, after notice not to pay over, is examined in the case of *Vischer* v. *Yates*, 11 Johnson, 29. The opinion of Judge Kent is relied upon by the counsel as conclusive on the subject. A thorough analysis of this very learned opinion would be rather a matter of legal criticism, without any particular advantage to our jurisprudence, or to the investigation of the principles which lie at the root of this case. We will state our conclusions after an attentive consideration of the reasons on which that opinion is based. The decision in that case professedly rests upon the English rule that, on the *disaffirmance* of an illegal or void contract, before it has been carried into effect, and while the money remains in the hands of the stake-holder, each party ought to be allowed to withdraw his own deposit. Courts in England will not assist either party, *as against the other*, in respect to these illegal contracts; but they will not permit a stake-holder, who is no party in interest in the' contract, to avail himself of his possession to protect himself under the illegality of the contract. Judge Kent considers these principles not only to be the settled law, but their operation salutary in discouraging the practice of betting on elections, and that the English rule is most fit and effectual in putting an end to it.

Were we deciding s case under the law of England, or New York, it would be with the greatest caution that we should dissent from this high authority; but we are obliged in our decisions to be guided by the rules of our own jurisprudence. We find the English decisions based upon a rule which, in the artificial condition of that nation, may be politic, just, and salutary in its operation, but founded upon distinctions which, according to our polity, are inadmissible. For instance their courts take a distinction between contracts that are immoral or criminal, and such as are simply illegal and void. Assistance is given to parties in the latter case to receive back money paid. Our Code declares that an obligation without a cause, or with a false or unlawful one, can have no effect, and the contract, which is illegal, is held, *ipso facto*, to be immoral. Money lost at play in certain cases can be received back in England, and in New York, by virtue of statutory provisions; but by our law, where the winner could not recover his bet, the loser has no action to recover back what he has voluntarily paid, unless he has been cheated. Civil Code, art. 2953. We cannot adopt the English rule on this subject; and even under this rule the plaintiff in this case could not recover, for betting on elections is *criminal* in Louisiana.

This case of *Vischer* v. *Yates* was reversed by the Court of Errors, 12 Johnson, p 1, (*Yates* v. *Foot*); it was then determined that, where money is deposited with a stake-holder on an illegal wager, and the bet has been lost and won, no action lies, after the event has happened, by the loser against the stake-holder to recover back his deposit, which still remains in the hands of the stake-holder, and which he has had notice not to pay over to the winner. The

23

attempt to stop the payment in this case was made after the event—after the bet was lost and won; the election had taken place, but the result was not known.

In the case of *Babcock* v. *Thompson*, 3 Pickering, 449, though the action was brought by the loser against the winner, the very general terms in which Chief Justice Parker states the law render his opinion not easily to be reconciled with the opinion in the case of *Vischer* v. *Yates*, as delivered by Judge Kent, and with the English rule adopted by him. "Where a party acts illegally," says Judge Parker, "he is to suffer the loss of his money as the consequence, if the money is sought to be recovered, except where he may have a remedy under the particular provisions of some statute. Here is a case of gaming, accompanied with cheating. Clearly if the gaming had been fair, the law would give no remedy. The only question then is, whether the fraud will alter the case. We think it will not. If a man thus voluntarily puts himself in a condition to be cheated, through his illegal acts he cheats the government and the other person cheats him, and they must be left to settle the matter between themselves."

Chief Justice Marshall, in the case of *Armstrong* v. *Toler*, 11 Wheaton, 258, lays it down as a general principle, which is perfectly settled, that no action can be maintained on a contract, the consideration of which is wicked in itself, or prohibited by law. The effect of this principle upon collateral and subsequent contracts is the subject of controversy; but the late Supreme Court very properly refused to permit a debtor, who had placed property in the hands of a third person for the purpose of defrauding his creditor, to recover it back, and thus enabled the holder of the property to retain what did not belong to him, and based their decision on the stern morality of the Roman law. *Gravier's curator* v. *Carraby's executor*, 17 La. 131. A contract must have *a lawful* purpose; and if it have an unlawful cause—if it be contrary to good morals, *or public order*, it can have no effect. Civil Code, arts. 1772, 1887, 1888. Pothier, Obligations, § 43 *et seq*. *Bartle* v. *Coleman*, 4 Peters, 186. "Where the contract grows immediately out of, or is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it; and if the contract be in fact only connected with the illegal transaction, and growing immediately out of it, though it be in fact *a new contract*, it is equally tainted by it." *Armstrong* v. *Toler, loco citato*.

The safety and success of our institutions depend upon the purity of the elective franchise, and the substitution of a desire of gain to the exercise of that free and unbiassed judgment which an elector is bound to exercise in the choice of those to whom political power is to be entrusted, is so fraught with disasterous consequences, that they cannot be considered without alarm. The addition of a spirit of rapacity to the already too ardent excitement growing out of the struggles for ascendancy between parties, tends to produce results which must terminate in putting an end to this great experiment of self-government which our republic offers to the world. Where the masses are large, betting on elections produces rarely any effect on the result; but where the number of voters is small, and their places of residence are distant and scattered over a large surface, the money bet on an election may control the result, and the election of magistrates depend, not on the judgment of the electors, but upon the rapacity of those who are struggling to win their bets. Our elections, if such proceedings were tolerated, would cease to be the choice of the people of those who are to administer their affairs, but become a disreputable game of desperate chance

and profligacy.   The legislature with a view of preventing this abuse, subjected any person directly, or indirectly, betting on any election, to prosecution by indictment or information, and imposed a fine on the offender of not less than the amount bet, nor of more than double that amount.   By the same law the action of the prosecuting officer of the State is quickened, by positive directions, to report the *names of the offenders* to the trustees of the common school fund of each parish, who are the recipients of the fines; and it is made the duty of judges throughout the State to give this act especially in charge to grand juries at every term of their courts.   Laws of 1839, p. 92.

A party cannot come into a court of Louisiana, and invoke the assistance of the very judge, whose voice has just been heard, in the interest of *public order*, in warning the good people of the State against transgressing this law, to aid him in recovering money, which he had placed in the hands of another for the purpose of violating it.

The plaintiff bases his right of recovery on the contract which he has made, and that contract the law will not permit him to mention.   Before the question whether the stake-holder shall be permitted to retain what does not belong to him, stands another which overshadows it, which is, whether the plaintiff can be heard when he asks the assistance of the court to relieve him from the consequences of having violated the law.   It is our duty to say that he cannot.   The law leaves him where his conduct has placed him.

The Supreme Court of the United States, in the case of *Bartle* v. *Coleman*, 4 Peters, 189, says: " If either has sustained a loss by the bad faith of a *particeps criminis*, it is but a just infliction for premeditated and deeply practised fraud, which, when detected, deprives him of anticipated profits, or subjects him to unexpected losses.   He must not expect that a judicial tribunal will degrade itself by an exertion of its powers, by shifting the loss from the one to the other, or to equalize the benefits or burdens which may have resulted by the violation of every principle of morals and of laws."

The judge who tried this cause referred the plaintiff's petition to the attorney general, which is the only disposition which a court of justice could make of it.

*Judgment affirmed.*