No. 609

First Circuit

———

WATKINS COMPANY v. BROWN ET AL.

———

(March 5, 1930.  Opinion and Decree.)
(April 14, 1930.    Rehearing Refused.)
(May 5, 1930. Writ of Certiorari and Re-
view Refused by Supreme Court.)

———

Lindsay McDougall, of Covington, attorney for plaintiff, appellant.

S. S. Reid, of Amite, attorney for defendant, appellee.

MOUTON, J. July 5, 1921, plaintiff company entered into a written contract with Robert Lee Brown, one of the defendants herein, to sell to Brown certain goods or articles during a stipulated period which was to terminate in March, 1922. This contract was signed by Brown as principal and by D. E. Vernon and T. E. Tycer, as sureties.

Under the terms of the contract Brown was restricted in the sale of the articles to be so furnished to the territorial limits of the parish of St. Helena, including its incorporated municipalities. In consideration of the obligations of the plaintiff company to furnish these goods, Brown was required by the conditions of the agreement to make, at least four times a year, a thorough and "personal canvass" of the territory thus assigned, with a proper outfit, at his own expense to sell these goods.

In the latter part of November, 1921, about four months after the original contract was executed, Brown was in arrears with plaintiff company for $535.40. On the 1st of December, 1921, another contract was signed by Brown by which the term for the payment of this accrued obligation was extended to March, 1923, with the promise of plaintiff company to furnish the articles he might need to that date. This agreement was also signed by the two same sureties.

It seems that Mr. Brown was doomed to fail in his settlements with plaintiff company, as it appears that again, on November 24, 1923, he signed another contract for $1,321.45, with sureties to obtain a further extension on this indebtedness to the first day of March, 1925, with a continuation of the obligation of plaintiff company to sell the goods to Brown, in accordance with the stipulations of the agreement. This contract was also signed by two sureties, H. W. Bond and D. E. Vernon.

In the second contract signed December 1, 1921, and the third contract hereinabove mentioned, on which this suit is brought against Brown and his sureties, it was not made a consideration in the agreement that Brown should personally canvass the territory described in an outfit, at his own expense, for the sale of the goods in which were included drugs, ointments, nostrums, applications, and such like which formed a part of the subject-matter of the contract.

In the case of J. R. Watkins, same company, vs. Russell et al., decided by this court in June, 1924, we said, in reference to articles sold, practically of the character as those furnished Brown in this case, as follows:

"They include such articles as cough medicine, herb tablets, liniments, menthal-camphor ointment, blood and skin tonic, laxative wafers, and other preparations intended for the treatment of disease or injury. They were sold to Russell in consideration of his agreement to make a thorough and personal canvass of said territory, at least four times a year, at his own expense, and to provide proper outfit therefor, and to sell such goods or so much thereof as possible. This was an agreement, we said, to become an 'itinerant vendor' and it was this agreement which induced the Watkins Company to contract with Russell."

Leaving out what immediately follows the foregoing, we said:

"If the Watkins Company had sold its medicines directly to the consumers, through Russell as agent, it should have become a party to contracts forbidden by law and therefore unenforceable under the fundamental provisions of the Civil Code. Russell was not agent, however, he was vendee; but he was vendee of medicines under an agreement which bound him to resell them as an itinerant vendor contrary to a statute enacted for the protection of the public health. The general rule applying in such cases is stated in 13 C. J. 424:

" 'If an agreement binds the parties or either of them to do, or if the consideration is to do, something opposed to the public policy of the State or nation, it is illegal and absolutely void however solemnly made.'

"The rule is stated in 6 R. C. L. 704, as follows:

" 'It appears that all the Courts are agreed that where a statute is enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, a contract in violation thereof is ordinarily void.'

"The Louisiana jurisprudence is uniformly in accord with this rule. A long line of cases cite the Court's per curiam in Davis vs. Holbrook, 1 Ann. 176, where it is tersely said: 'A party will not be heard who asks the Court to release him from the consequences of having violated the law.' "

Counsel for plaintiff contends that as the obnoxious clause by which Brown, defendant herein, had bound himself to canvass the territory described, in the first contract, is not incorporated in the third contract on which this suit is brought, the case of the Company vs. Russell, above referred to, does not apply.

The first, second, and third contracts were all made for precisely the same purpose, although the clause in question which was inserted in the original agreement was intended to promote the introduction of these medicines in the parish of St. Helena, and with the object in view of increasing the volume of sales. Two officers of plaintiff company, it is true, testified, under commission, that when these contracts were signed that the officers of the company did not know that defendant Brown was not a pharmacist and had no fixed place of business.

In the original agreement to which we have heretofore referred, Brown bound himself to make a thorough and personal canvass of the territory, at least four times a year, at his own expense, with a proper outfit to sell the goods. No one, for a moment, could believe that a pharmacist who might have been located in any of the municipalities of that parish would have bound himself to any such engagement.

Brown says he was recommended as a "country farmer." No doubt he was, and that the company knew it.

The second and third contracts were a mere continuation of the first, and were permeated with the vice, taint, or virus of the original agreement.

Counsel for plaintiff contends that section 12 of Act 56 of 1914, p. 129—upon which the judgment in the .Russell' case was grounded—is broader than the title of the act, and therefore unconstitutional. The act is not attacked in the pleadings as being subject to that objection, but we shall however consider its provisions in reference to the point on this issue raised in counsel's brief.

The act begins by saying: "To regulate the practice of medicine," etc. Then it proceeds further, and says in its title: "To prevent the practice of medicine, surgery * * * by unauthorized persons."

Section 12 of the Act says:

"That any itinerant vendor of any drug, nostrum, ointment or application of any kind, intended for the treatment of disease or injury, or who may by writing, print or other methods, profess to cure or treat disease or deformity by any drug, nostrum, manipulation, or other expedient in this State, shall if found guilty, be fined * * * or shall be imprisoned," etc.

Evidently, the object of the act was to regulate the practice of medicine by competent physicians or surgeons, and to prevent its practice by unauthorized or incompetent persons. The attempt made in section 12 to suppress itinerant vendors of drugs, etc., was obviously incorporated in the statute, for the prevention of the practice of medicine by quacks, mountebanks, and such like, unquestionably "unauthorized persons" mentioned in the title of the act. The title of the act is certainly indicative of its object which legitimately takes in the "itinerant vendor" mentioned in section 12; and complies with the requirement of section 16, art. 3, Constitution, 1921.

Counsel contends also that there is no penalty for the mere vending of drugs, ointments, nostrums, etc., imposed by the act. The contention is that the only offense therein denounced is professing to prescribe for or treat.

The section in question reads:

"That any itinerant vendor of any drug, nostrum, ointment or application of any kind, intended for the treatment of disease or injury, or who may by writing, print or other methods, profess to cure, or treat disease or deformity by any drug, nostrum, manipulation, or other expedient in this State, shall if found guilty, be fined," etc.

In the above quotation, by stopping at the word "injury" and by lopping off "or who may by writing" down to the word "State," the following occurs: "Shall if found guilty, be fined," etc. By so analyzing the section, the vending of drugs by the itinerant vendor is clearly penalized. The words "profess to cure" have reference to those who by writing or print profess to cure not only by the sale of drugs, because that clause of the act says by "manipulation or other expedient," and also refers to deformities, all of which cannot apply to the mere vending of drugs and nostrums by the itinerant vendor.

The statute therefore denounces the vending of the drugs or nostrum by itinerant vendors as a crime; also, when by print or writing he professes to cure diseases or deformities by manipulation or other expedient. The penalty is prescribed against the offender who violates the provisions of the act in either of the ways above stated.

The words "profess to cure," we think, apply also to the mere vending of the drugs. We say this because no sales of the nostrums would be possible, unless the purchaser were promised a cure. Of necessity, such an affirmance by the itinerant vendor must be implied in every sale. The word "profess," taken in its general sense, means "to acknowledge," "to avow," "to affirm." Every sale must necessarily carry an "avowal" or "affirmance" of the curative virtues of the nostrum. The other part of section 12, which takes in as violators of its provisions "to profess to cure" by print or writing, refers to those who represent themselves as selling the drugs in some professional capacity, and not only as ordinary itinerant vendors.

Article 14, Civ. Code, says that in the application and construction of laws too much attention must not be given to the niceties of grammar rules. Section 12 of the act is not perfect in point of diction or grammatical construction, but, we think,

that our interpretation of its provisions carries out the legislative purpose which was to prevent the practice of medicine by the unqualified and the unauthorized. Courts we do not think should be too supercilious in their construction of legislative enactments.

The last contention of counsel is that the statute interferes with interstate commerce, and is therefore void, citing State vs. West, 136 La. 867, 67 So. 934, in support of that contention. In that case the accused had been prosecuted for having violated the provisions of an ordinance of the board of agriculture and immigration of this state. The court found that the information was in strict conformity to the ordinance, but did not charge that the citrus imported by the accused were diseased, the only charge being that they were imported. Obviously, the ordinance did not come within the proper or legitimate exercise of the police power of the state, and, for that reason was, by the court, declared null. In support of its ruling, the court refers to the case of Railroad Company vs. Husen, 95 U. S. 465, 472, 24 L. Ed. 527.

In passing on the issues involved in that case, the Supreme Court of the United States said:

"We unhesitatingly admit that a State may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders."

In the instant case, the statute was enacted for the protection of the public "health" of the state as a police regulation, and is not subject to the objection urged by counsel for plaintiff.

In this suit, as it appeared in the Russel case, there were articles sold to Brown that he could have validly transferred. This is true, but the consideration which he promised was the price and his obligation to sell all the articles, including the medicines or nostrums. The consideration being indivisible, so is the contract as a whole. Civ. Code, arts. 2108, 2109.

We quote here what is said in Fabacher vs. Bryant, 46 La. Ann. 820, 15 So. 181, 183, as follows:

"It is trite in our jurisprudence that contentions originating in unlawful purposes are not to be brought into courts of justice."

As we said in the Russell case, all the parties to the illegal transaction are estopped, and the law leaves them, with their loss or gain, where it finds them.

The sureties have the right to oppose the principal obligation which is the foundation of their liability. Civ. Code, art. 3060. The principal obligation being null, and not enforceable for the reasons stated, Brown and his sureties are not bound for the amount claimed, which was properly rejected by the judgment below, which is affirmed, with costs.

LECHE, J., not participating.