## W. T. RAWLEIGH CO. v. HICKS et al.*
### No. 5328.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

*Rehearing denied Feb. 5, 1937.

R. L. Williams, of Arcadia, for appellant.

J. Rush Wimberly and Robt. H. Wimberly, both of Arcadia, for appellees.

DREW, Judge.

Plaintiff entered into a contract with E. L. Hicks to sell and deliver to him its products as he ordered. C. H. Sledge and J. W. Campbell signed the contract with Hicks, as sureties, and unconditionally agreed to pay plaintiff for all goods, wares, and merchandise delivered to Hicks and also agreed to pay all prior indebtedness that Hicks was due plaintiff on the date of acceptance of the contract. Under the contract the sureties waived any right they might have to require plaintiff to exhaust its remedy against the principal before proceeding against them.

Plaintiff instituted this suit against the principal and sureties in solido for the sum of $351.04 with 5 per cent. per annum

interest from August 21, 1931, until paid, alleging that was the amount due and owing to it by Hicks on that date for goods, wares, and merchandise sold and delivered to him. The contract was accepted by plaintiff at Memphis, Tenn., in January, 1930. It is attached to the petition and it is as follows—less that part applying to the sureties:

"(1) In consideration of the execution and acceptance of this agreement, and the covenants hereinafter expressed, The W. T. Rawleigh Company, an Illinois corporation, hereinafter called the seller, agrees to sell and deliver to the undersigned buyer f. o. b. Memphis, Tennessee, or at any other point agreed upon, such reasonable quantities of its products as the buyer may order for cash or on time, at current wholesale prices; also if desired will sell buyer any autobody, wagon, or sample cases, for cash, or partly for cash, or wholly on time, such as the buyer may choose from bulletins or other descriptions.

"(2) Buyer, in consideration of the agreements herein, agrees to pay said seller, in full, for all goods purchased under this contract, also agrees to pay any balance due the seller at the date of the acceptance of this renewal contract for goods previously sold under any and all former contracts, by cash, or by installments satisfactory to the seller at invoice prices and according to the terms and conditions thereof, and subject to such cash discounts as may be shown in current discount sheets.

"(3) It is mutually agreed that either party may terminate this contract by written notice at any time, and when so terminated, all accounts between said buyer and seller shall become due and payable immediately. If this contract is not so terminated it shall expire on December 31, 1930; it being agreed that a new contract may be entered into for the succeeding year, but the refusal or neglect of the buyer to furnish an acceptable contract, or the refusal of the seller to accept such contract shall not in any way affect the payment of the account incurred hereunder.

"(4) If the business relations be terminated for any reason, the seller agrees to purchase from the buyer at wholesale prices current when goods are received, any merchantable products buyer may have on hand (sample cases, wagons, auto bodies and discontinued products excepted), provided goods are returned promptly by prepaid freight, to point designated by seller, the buyer agrees to pay seller the actual cost for receiving, overhauling and inspecting same.

"(5) It is mutually understood and agreed that this is a contract of buyer and seller, and that the buyer is not the agent or representative of the company for any purpose whatsoever, but is the sole owner and manager of his business, and that he expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the seller, it being mutually understood and agreed that when the seller delivers the merchandise f. o. b. to buyer, at point of shipment, the merchandise becomes the property of the buyer and the seller retains no right, title, interest or control over said merchandise, it being mutually and fully understood that the buyer is in business for himself and that the seller does not undertake in any way to control buyer in the conduct of his business.

"(6) With the express understanding that it shall impose no legal restrictions whatsoever and that it shall not alter or modify the written terms or conditions of this contract, nor be considered as orders, directions, or instructions, or binding in any way upon the buyer and that it shall be considered only as advice and suggestions intended only to aid the buyer in improving his sales, collections, and service to his customers (which advice or suggestions he may follow or not as he may choose) the seller will furnish buyer from time to time with Rawleigh Sales Service and Collection Methods, consisting of Rawleigh Weekly, Rawleigh Methods, and other books, bulletins, service, sales or collection letters, and other letters and literature; it being intended and mutually agreed that this contract shall be the sole and only binding agreement between the parties hereto, and that it shall not be changed or modified in any way or by any person except such change or modification shall be first reduced to writing, signed and agreed by both witnesses hereto, and the seal of the seller thereunto affixed.

"(7) In Witness Whereof, the parties have set their hands and seal, the seller in its corporate name by its president there-

unto duly authorized and its corporate seal hereunto affixed, and the buyer in his own proper person.

"The W. T. Rawleigh Company
"By W. T. Rawleigh, President.
"Accepted
"Jan. 2, 1930.     Buyer
"At Memphis,     Sign Here..E. L. Hicks
    Tenn.     P. O. Address..Houghton."

There is no dispute as to the amount due plaintiff, if anything, and the evidence establishes that the price of the goods shipped to Hicks, less the payments made, is the amount sued for, and, under the contract of surety, if Hicks is liable, then the sureties are also liable.

The defense made is set out in paragraphs 4 and 5 of the answer, and is as follows:

"For answer to Paragraph 4, your defendants admit that they signed a purported agreement, but they aver and allege that said purported contract or agreement was intended to be a sales agency in which E. L. Hicks was to receive from plaintiff certain drugs, nostrums, ointments and other commodities which, under the law, the said E. L. Hicks could not sell legally or dispose of legally, and that under Act 56 of 1914, the said E. L. Hicks was prohibited from sellings drugs, nostrums or ointments as an itinerant vendor. That under the purported contract it was contemplated, understood and agreed that the said E. L. Hicks would peddle and sell and become an itinerant vendor of said drugs, nostrums and ointments and other items. That said contract being for the sale and distribution of such articles as above referred to was prohibited by law and said purported contract is therefore a nullity; that under the law the said E. L. Hicks is not bound and therefore your defendants are not bound.

"In answer to Paragraph Seven your defendants show that said contract or purported contract referred to was null and void and that your defendants as sureties are not bound thereby, that said contract was prepared for the fraudulent intent by the said plaintiff to evade the law, and that the said plaintiff required of the said E. L. Hicks that he peddle and act as an itinerant vendor of the drugs, nostrums, ointments and other commodities delivered to him by the said plaintiff; that the said plaintiff instructed him to travel and sell and dispose of said drugs, nostrums, ointments and other commodities, well knowing same to be in violation of the laws of the State of Louisiana, and fraudulently left said stipulation out of said purported contract, but under separate letters and instructions required of the said E. L. Hicks that he travel and peddle as an itinerant vendor of the said drugs, nostrums, ointments and other commodities."

The lower court rendered judgment rejecting the demands of plaintiff and it has perfected an appeal to this court.

The defense is based upon section 12, Act No. 56 of 1914, which is as follows:

"Be it further enacted, etc., That any itinerant vendor of any drug, nostrum, ointment or application of any kind, intended for the treatment of disease or injury, or who may by writing, print or other methods, profess to cure or treat disease or deformity by any drug, nostrum, manipulation, or other expedient in this State, shall if found guilty, be fined in any sum not less than twenty ($20) dollars and not exceeding one hundred ($100) dollars for each offense, to be recovered in an action of debt, before any court of competent jurisdiction, or shall be imprisoned for a term of not less than ten (10) days or more than thirty (30) days, or be both fined and imprisoned."

There is no dispute of the fact that Hicks was an itinerant vendor of drugs, nostrums, and ointments intended for the treatment of disease or injury, and that they were delivered to him by plaintiff along with other products that could not be so classed. However, under articles 2108 and 2109 of the Revised Civil Code, the contract was indivisible and, if the defense set up is good as to part of the articles or goods received and sold by Hicks, it is also good as to the entire amount.

If Hicks was acting as plaintiff's agent in selling the goods, which are prohibited by law, as an itinerant vendor, then plaintiff cannot recover. If he was not an agent and the goods were sold to him by plaintiff with the knowledge and intent that he resell them as an itinerant vendor, plaintiff is in no better position. In order to determine in what capacity Hicks was acting in selling the goods, it will be necessary to look into and analyze the contract, and to properly do so and determine the intent of plaintiff, the action of said plaintiff after the contract was entered into will likewise have to be analyzed. The First Circuit Court of Appeal of this state has

passed upon a like question three times, in which the plaintiff was in a similar business as the plaintiff in this case and offering like articles and goods for sale. In each instance it upheld the defense which is made in this suit. The three cases are: J. R. Watkins Company v. Russell (decided in 1924, before the decisions of the Courts of Appeal were reported); J. R. Watkins Company v. Robert Lee Brown, (decided in 1930), reported in 13 La.App. 244, 126 So. 587, and J. R. Watkins Company v. Gann et al. (La.App.) 159 So. 747, 748.

In the last-cited case the court, after referring to the cases decided prior thereto, said: "It may be that it was with the purpose of getting around the effect of those decisions that the contract was changed and made to read as does the one in this case."

It is further said: "The contract, in its present form, may very well be a subterfuge on the part of the plaintiff, and we are inclined to believe that that was the reason which prompted the district judge to reject its claim."

These quoted statements, we think, apply to the case at bar, for one of the above-cited cases had been decided nearly six years before the present contract sued upon was entered into.

There is uncontradicted evidence in the record that plaintiff does not sell its goods through retail stores, but depends entirely upon itinerant vendors to dispose of them. In the first paragraph of the contract, we find the following clause which is significant when taken with the other evidence which we will review. That clause is:

"Also, if desired, will sell buyer an auto body, wagon, or sample cases for cash, or partly cash, or wholly on time, such as the buyer may choose from bulletins or other descriptions."

Before any contract with defendant Hicks was accepted by plaintiff, he was sent a document for his signature, which is headed—"Sales Estimate and Location Recommended." In this document we find the following clauses:

"Location Recommended for Headquarters......City or Town, County or District, Bossier, State or Province, Louisiana.

"All villages in the locality where you expect to sell which are under 1000 in population should receive the same regular service by you as rural consumers. Villages, including the one in which you locate, if the population is over 1000, will be supplied by city and town retailers.

"Tributary Territory......South of the township line running east and west through Benton. Including all cities and towns having a population of less than 1000 or which are not incorporated. * * *

"Under normal conditions the Company expects its customers who retail to rural consumers to make minimum sales of at least $3000 per annum. * * *

"The minimum annual business the Company expects is $4500. * * *

"While you should not rent a house or go to any expense in getting located at the above location until after you have been notified of the acceptance of your contract, you should be able to complete all arrangements and be ready to begin selling on or about June 1, 1929. * * *

"If the above is satisfactory to you as a place in which to sell, please sign the original of this form and send it in with your first order for products so we will know where you are located."

This document alone, the pertinent parts of which are quoted, makes it clear to our mind that plaintiff was assigning and did assign to defendant Hicks a territory, to which he was limited, in which to make sales, and all the quoted clauses taken together are entirely inconsistent with plaintiff's contention that the goods shipped to Hicks were goods to be sold by him when and where he pleased, free from any control by plaintiff. We further find from the testimony that Hicks was required to make a weekly report of the number of days he traveled in selling the goods, the amount sold, and was required to cover his territory at certain intervals.

On January 14, 1930, plaintiff wrote the following letter to Hicks:

"Mr. E. L. Hicks,

"Haughton, La.

"Dear Sir:

"Your report for the first week of the New Year is a little more encouraging, Mr. Hicks. It shows that you are starting out the New Year with a stronger determination, which if backed up by steady traveling and hard study, will help you win out during the year 1930.

"You report calling upon a good many families, but it appears that you are too

easily put off. Even though they cry hard times, you must remember, Mr. Hicks, that Rawleigh products are absolute household necessities which they are forced to secure from someone and there is no reason why you should not have their business, considering the superiority of your Products over any they can get elsewhere. So you see it is up to you to study your Products and be able to explain and demonstrate them thoroughly and convincingly at each call. Then, you should be able to increase your lodgments with good responsible families, which will result in big collections for you on your next and future trips.

"We are expecting your annual inventory with your report for last week, which we expect to show that you put in full time and secured a good increase over any previous reports.

"Very truly yours,
"The W. T. Rawleigh Company
"C. P. Tipsword,
"Sales Department, Rural Division."

And on March 19, 1930, another letter, as follows:

"Mr. E. L. Hicks,
"Haughton, La.
"Dear Sir:

"Your report for the week ending March 8th was again encouraging in that you reported the largest sales of any week so far this year. Furthermore, if you are able to secure this amount of business in 3½ days out selling, you should be able to secure a larger and more profitable business when you spend 5½ or 6 days each week on the road.

"This all goes to show, Mr. Hicks, that you have not been making a very determined effort to secure the business, otherwise you could have made better sales right along week after week. We are certain the business is there for you, because anywhere there are men, women and children, there are needs for Rawleigh products, and it is just a question of your going after the business with a determination to stock them up with their seasonable requirements from one trip to another.

"Your worst enemy is lost time and for a while it looked as though he would get the better of you. However, now that the weather has cleared up, you should be able to get in more time on the road, and we are expecting your reports from now on to show full time engaged and a splendid increase in the amount of business you secure.

"Don't forget that your reports are to be itemized from now on. Unless they are, there is no use for you to send them in.

"Yours truly,
"The W. T. Rawleigh Company
"C. B. Tipsword,
"Sales Department, Rural Division."

On April 19, 1930, another letter as follows:

"Mr. E. L. Hicks,
"Haughton, La.
"Dear Sir:

"Your report for Anniversary Week shows that you were out selling practically full time and made a special effort to beat Mr. Rawleigh's record. While you did not make it, yet we compliment you upon what you did accomplish as the result of a special and extra effort throughout the week.

"Do not be discouraged because you fell down last week. Persistent efforts always win, provided methods are sound and practical. If you will just continue studying Rawleigh Methods, use them every day and continue your effort to give your customers better service, you can do just as well every week as you did during Anniversary Week.

"We are depending upon you for this same effort every week, since you have proven what you can do when a special or extra effort is put forth, and since it paid you so well last week, what is there to prevent you from securing this same amount or more business weekly?

"Yours truly,
"J. E. Stewart,
"Acting Manager."

And on March 27, 1930, the following letter was written to Hicks by the plaintiff:

"Mr. E. L. Hicks,
"Haughton, La.
"Dear Sir:

"We regret to learn that you have just about decided to close up your business in south Bossier Parish, especially because you were just beginning to make a little progress in supplying the good families in that locality with their seasonable requirements of Rawleigh Products. Of course, you know whether or not your business is profitable to you and naturally if it is not you should give it up and get into something else which will be more satisfactory to you.

"On the other hand, we are sure that there is a good business to be had in that

Locality if you will only get out and go after it, but since you say you are unable to travel, you of course cannot expect to secure the maximum business and make very large profits.

"While, of course, we hope that you do not become discouraged before you give Rawleigh Retailing a fair trial, still if you have concluded that you will not be successful in Rawleigh Retailing in that Locality, then the best thing for you to do is to close up your business and secure and start your successor. Once you have your successor started, we will repurchase on Bill of Sale and Order all the products you have on hand, which your successor wishes to purchase. Unless you do start your successor, then it will be up to you to find another dealer who wants to buy your stock of unsold products.

"We shipped a small assortment of products you ordered, in the hope that you will decide to go ahead, crowd hard and make good in that Locality. However, we should know at once what you intend to do so that we may govern our actions accordingly. If you have decided to quit, then you should set about to secure and start your successor to carry on the business where you give it up.

"Yours truly,
"The W. T. Rawleigh Company,
"C. B. Tipsword,
"Sales Department, Rural Division."

The above-quoted evidence, together with other documents in the record and the oral testimony of Hicks, which is not contradicted, to our minds clearly shows that Hicks was an agent of plaintiff, assigned to sell its products in a designated territory only, and to sell at prices fixed by it. The record also discloses that Hicks was not called upon until after he had ceased his employment to pay for any goods until he had sold same, and the contract relied upon by plaintiff in this suit is surely a subterfuge made for the purpose of getting around the law relied upon by defendants in their defense. If this be incorrect, it is certain that, when plaintiff entered into the contract and shipped its goods to Hicks, it knew that he was to sell them as an itinerant vendor, and by letters it insisted that he put in more time doing so. Under either view taken, we are of the opinion that plaintiff is barred from recovery for the reason that all parties to illegal transactions are estopped and the law leaves them,

with their illicit loss or gain, where it finds them.

The case of J. R. Watkins Company v. Brown et al., cited supra, clearly is applicable to this case, and in that case we find a clear and lucid discussion of the law applicable here.

For the reasons above assigned, the judgment of the lower court is affirmed, with costs.