## W. T. RAWLEIGH CO. v. COEN et al.
### No. 6085.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

E. J. Coen and Thomas M. Comegys, both of Shreveport, for appellants.

J. Fair Hardin, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues on a promissory note for $121.25, dated March 17, 1935, due August 1, 1937, and signed by the defendants, E. J. Coen, M. C. Coen and L. J. Coen; and alleges that it is the owner and holder of the note for a valuable consideration.

Defendants resist the suit and deny plaintiff's right to enforce collection of the note on the ground that it was given for an illegal consideration.

The trial judge awarded judgment for plaintiff, with written reasons therefor, and defendants appealed.

In December, 1933, plaintiff and defendant, E. J. Coen, entered into a written agreement, defined therein as a "Contract of Buyer and Seller", whereby Coen obligated himself to buy and to sell at retail, plaintiff's manufactured products for the term of the agreement. The products were to be, and, in fact, were consigned to Coen from Memphis, Tennessee, on open account.

The defendants, L. J. Coen and M. C. Coen, became sureties or guarantors for E. J. Coen and signed the contract with him.

The contractants operated under their agreement for the year 1934 and, presumably, it was terminated on or about January 1, 1935, at which time Coen was in arrears on the account to the extent of $121.25.

During the months of January and February, 1935, several letters passed between the parties, which reveal that plaintiff was pressing Coen for payment of the balance due or to liquidate same by note of himself and his sureties.

On February 17th Coen wrote plaintiff and requested that he be sent a note maturing in 18 months, to close the account, and promised to endeavor to have the same signed by his sureties. Plaintiff prepared a note, dated February 21, 1935, for $121.-25, which stipulated that it was payable in eighteen monthly installments (amounts not given), and forwarded the same to Coen for signatures. Coen received the note promptly, and after having changed the tenor of it by making the entire note due on August 1, 1937, signed it with his sureties, as makers, and mailed it to plaintiff. The note in its altered form was evidently accepted, as nothing to the contrary appears. It was not paid at maturity, hence this suit.

It is exceedingly important, in fact indispensable to a just decision in this case, that the relationship between Coen and plaintiff, arising from the contract between them, be here ascertained. If the contract produced the relation of principal and agent, the pertinent legal principles determinative of the respective rights of the parties, since default under the contract has occurred, are quite different from those which would govern if their relation were that of seller and buyer.

The contract between plaintiff and Coen, out of which the above mentioned indebtedness arose, is, for all practical and legal purposes, not dissimilar in substance and effect to that involved in the case of

W. T. Rawleigh Company v. Hicks et al., decided by this court and reported in 171 So. 616. Our interpretation of the nature of the contract at issue in that case and the relation between the parties thereto, which it superinduced, is clearly reflected from the third paragraph of the syllabi, to-wit: "Evidence held to show that itinerant vendor illegally selling drugs, etc., was wholesaler's agent selling at fixed prices within designated territory and that contract purporting to negative agency relationship was mere subterfuge, precluding wholesaler from recovering price of merchandise (Act No. 56 of 1914, § 12)." And so we find the present case.

█ Studied effort is reflected from the language employed in the contract before us to emasculate its true character. But, in determining the measure of the rights and obligations arising from such an instrument, courts of justice seek to learn therefrom the true intent and purposes of the contractants; and, in so doing, all pertinent facts and circumstances, including the parties' own construction of its meaning and operative effect, are weighed and considered. Par. 2 of Art. 1945, Civil Code.

"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms." Civil Code, Art. 1950.

Defendants here, as was done in the Hicks case, supra, plead that as the contract in question comprehends the sale of drugs, medicines, nostrums, ointments, etc., by Coen, as itinerant agent, compliance therewith could not be done legally, because to do so would violate Act 56 of 1914 and particularly section 12 thereof, which, in part, reads as follows: "Be it further enacted, etc., That any itinerant vendor of any drug, nostrum, ointment or application of any kind, intended for the treatment of disease or injury, or who may by writing, print or other methods, profess to cure or treat disease or deformity by any drug, nostrum, manipulation, or other expedient in this State, shall if found guilty, * * *" be fined or imprisoned, etc.

Of course, one may not stay within the protecting folds of law and at the same time engage to do and do that which the law denounces as wrong, criminal.

Defendants logically argue that since payment of the balance due on the account could not have been judicially enforced. and that as the contract is indivisible, as was held in the Hicks case, the note given to liquidate the account (in every respect) is as vulnerable to the defense herein urged (illegal consideration) as the account itself would have been if sued upon. This position is sound in law and equity.

"Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place." Civil Code, art. 2185.

█ The facts leading up to the execution and delivery of the note clearly disclose a purpose to novate the account, but novation itself does not invariably imbue the new obligation with virtues, indispensable to its legal existence and enforceability, not possessed by the old one. For the new debt to be free of attack against its legal integrity, the old one must have also been impregnable in that respect, because the basic foundation of the new obligation is the old one. Art. 2186 of the Civil Code tersely, though clearly and fully, comprehends the law on this issue: "To constitute a novation, there must be, at the time it is made, a valid obligation on which it can operate; if the first obligation, which it is intended to replace by the new one, be void, or if there be no such obligation, then the new obligation of no effect."

█ And since the balance due on the account was not enforceable because it resulted from the execution of a contract the performance of which, in all its parts, was repugnant to law, the note, in the eyes of the law, occupies no better status. There was no "valid obligation" on which it could operate; in fact, the basic obligation was "void" within the meaning of the quoted Codal article.

The trial judge, in reasons for judgment, stated that defendants might have had a good defense to the suit, but did not prove it. The court, to support this conclusion, found that it had not been proven that a part, at least, of the balance due on the account consisted of the price of the outlawed products. The intimation is quite strong that judgment would have gone for defendants had such a showing been made.

█ While the testimony bearing upon this issue is not so conclusive as it might have been, yet we think it adequate to make out a prima facie case thereon; sufficient, at least, to have required plaintiff, who

owns and has possession of the papers making up the account, to produce proof of probative weight adequate to overcome that prima facie case. It did not do so. The balance on the account is the result of one year's business under the contract. Coen testified, and there is nothing in the record to the contrary, as follows:

"Q. Mr. Coen, what is the nature of the products that you handled for the W. T. Rawleigh Company? A. A full and complete line, you might say, of forms of patent medicines, laxatives, cosmetic appointments, salves and just a full line of patent medicines is the best way to designate it.

"Q. Besides patent medicines, what did you sell? A. Extracts, spices—in fact, the company has one hundred and fifty products or more, that is just a part of the products."

■ The weight of authority preponderates strongly in favor of the contention that if a part of the consideration for which a note is given is illegal, that that fact renders the entire note unenforceable. Brannan's Negotiable Instruments Law, page 547. Cases from several of the states are cited to support this rule.

It was held in Miller v. Howell, 184 N.C. 119, 113 S.E. 621, that a note was unenforceable which was given for poultry or stock sold in violation of a statute requiring a license and making the violation thereof a misdemeanor.

Apropos to the question discussed, the court in Davis v. Holbrook, 1 La.Ann. 176, 178, said: "A contract must have a lawful purpose; and if it have an unlawful cause —if it be contrary to good morals, or public order, it can have no effect. Civil Code, arts. 1772, 1887, 1888. Pothier, Obligations, § 43 et seq. Bartle v. Coleman's Adm'r, 4 Pet. [184] 186 (7 L.Ed. 825). 'Where the contract grows immediately out of, or is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it; and if the contract be in fact only connected with the illegal transaction, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it.' "

This case is cited approvingly in Cummings v. Saux, 30 La.Ann. 207–211, part of the syllabi of which reads: "Contracts having an unlawful or immoral cause are not merely void themselves, but as a rule, can not be the basis of any valid auxiliary contract."

Coen, in May, 1935, applied to the Moratorium Commissioner for a suspension of the laws relative to the enforcement of obligations against debtors, and listed plaintiff as a creditor for "approximately $125.-00". His application received favorable action upon his promise to make monthly payments of $5 on this and other obligations. He failed to comply with this promise.

■ By admitting that he owed plaintiff, it is urged, estops Coen from now challenging plaintiff's right to enforce the obligation. This act could not be more binding on him, as a waiver, than signing the note, and we have held that the execution and delivery of the note did not alter the status of things ante-dating it.

For the reasons herein assigned, the judgment appealed from is reversed and set aside and plaintiff's suit dismissed at its cost.