McINNIS, Judge.
Plaintiff brings this suit against Eugene H. Goudeau and W. L. and J. A. Fletcher to collect $708.98 alleged to be due to it by Goudeau for merchandise sold and delivered to him. The other two defendants sign *162 ed a guaranty agreement to pay the debt if Goudéau did' not pay.
Goudeau filed an exception to the capacity of plaintiff to stand in judgment in this cause, because it is a foreign corporation doing business in the State of Louisiana without having complied with the law of Louisiana applicable to foreign corporations doing business in Louisiana. The other two defendants filed jointly, the same plea.
The exceptions were all tried together and after hearing evidence on the exceptions the district judge sustained the exceptions and dismissed plaintiff’s suit. From this judgment plaintiff prosecutes a devolutive appeal.
The district judge found as a fact that plaintiff, a foreign corporation, is doing business; in this state without qualifying, as required by Act No. 8, Secs. 1 and 2, 3rd Extraordinary Session of 1935; LSA-R.S. 12:211, so that at this time, this is the only question to be answered. The Legislature has not spelled out what constitutes doing business in this State by a foreign corporation, leaving to the courts the determination of whether or not the corporation is engaged in business after hearing the facts. The district judge in this case likely felt impelled to follow the decision of the Court of Appeal, First Circuit, in the consolidated cases of J. R. Watkins Co. v. Stanford (J. R. Watkins Co. v. Carmouche) 52 So.2d 325, where similar pleas were considered and sustained.
In the instant case, from the maze of testimony, oral and documentary,' the following facts appear: Plaintiff is a Delaware corporation with its principal office at Winona, Minnesota and branches at Memphis, Tennessee and other cities in the United States and Canada. It has no office in and owns no property in Louisiana. It sells its products principally through itinerant dealers on four different plans:
1. Dealers who send cash with their orders for products.
2. Dealers who deposit $1,000 cash with plaintiff.
3. Dealers who deposit collateral security to secure their accounts.
4.Dealers who secure the payment of their accounts by obtaining the signatures of guarantors.
In the instant case, the credit of the dealer was secured by the signatures of two guarantors, who are defendants along with the dealer. These dealers are set up in business by plaintiff to sell its products in certain areas. They are given creditor for products of the plaintiff and are required to send in weekly reports of the amount of sales on credit and for cash and of the amount collected- on accounts and to remit to plaintiff 60% of the amount of cash taken in each week. Plaintiff has a field man in Louisiana whose duties are to secure new dealers, and when the account of the dealer is to be secured by the signatures of guarantors, to check the public records to ascertain whether or not the guarantors are financially responsible, and then to send the contract to the Home Office for acceptance or rejection. The field man also visits with dealers at times to assist them in any way he can to increase sales and to conduct business for profit of dealers and plaintiff. To this end periodical meetings of dealers are held at certain points, where dealers meet to discuss their problems, and the field man attends these meetings. Dealers are invited, but not compelled to attend these meetings. The dealers pay their own expenses in attending meetings, except that they are invited to lunch at the expense of plaintiff. The right to terminate the contract at' will by giving notice in writing is given plaintiff and dealer. Right is given the dealer to return unsold products on termination of the contract, and receive credit for whatever is returned, or cash if he is not indebted to plaintiff.- Dealers are encouraged to enlist other persons to engage in business, and if successful, and the prospect is accepted, plaintiff pays the dealer who secured the recruit $60. Dealers own their own automobiles or other means of conveyance, pay for their license to sell merchandise from house to house, as required by Act No. 166 of 1942, LSA-R.S. 47:369, and pay their other expenses. Certain instructions or suggestions are sent to dealers, such as:
*163 1. Five to six days each and every week on your routes.
2. Extend to your good customers a liberal time sales program.
3. Call on 20 to 25 customers each day.
4. Offer each customer group deals, specials, and pass the many bargains the company offers on to your customers.
5. Mail advance notices four or five days ahead of each call so your customer will know you are coming.
6. Study the labels on your products, and other literature you receive from the company, so you will know the many and various uses of the products you have to sell.
The field man, Mr. Soileau and the Memphis General Manager, Mr. Harry M. Myers, both testified that these are suggestions for the successful operation of the dealer, and not requirements. Their testimony is to the effect that the dealer selects the territory in which he expects to operate his business, and that in order to be successful, a dealer in a rural area should have about 800 families to serve, and he is protected in the territory he serves.
Dealers are also supplied with retail price lists of the products, but the evidence is to the effect that these pric.es are suggestions to the dealer, and that he is not bound to abide by them. In fact Mr. Myers says the dealer could give the products away if he wanted to, but he would still owe the company for them.
The business of plaintiff in Louisiana amounts to about 4% of its business, according to the record in this case.
The district judge reasoned despite the testimony that the suggestions are not requirements, that they are, and that if the sales by plaintiff to the dealer are outright sales, it is unusual then to direct the dealer how to dispose of the merchandise unless there is a contract of agency hidden in the contract. He also reasoned that because the dealer has the right to return unsold merchandise for credit, the sales by plaintiff to dealers are conditional sales, and concluded that plaintiff is a foreign corporation doing a substantial business in Louisiana without being authorized to do so.
Numerous decisions from this and other jurisdictions have been cited. We prefer, where possible, to rest our decisions on cases from our own State, and we find no serious difficulty in doing so in this case, despite the decision of our brothers of the First Circuit in the case of J. R. Watkins Company v. Carmouche, supra. In the cited case the court held:
“Where a foreign corporation entered into a contract to sell its products to certain dealers, but the contract indicated and facts showed that so called dealers were subject to control of seller as to selling price of goods, area to work and sellers (dealers) were required to submit weekly reports of their sales and were required to attend sales conferences conducted by seller, foreign corporation was actually doing substantial business in the State, and therefore was not entitled to sue upon matters arising out of contracts until it had properly qualified with the Secretary of State. LSA-R.S. 12:211.” Syl. 3.
And in support of its conclusions the court cited such cases as: W. T. Rawleigh Co. v. Hicks, La.App., 171 So. 616; J. R. Watkins Co. v. Brown, 13 La.App. 244, 126 So. 587; J. R. Watkins Co. v. Gann, La.App., 159 So. 747; W. T. Rawleigh Co. v. Coen, La.App., 195 So. 660.
In the Hicks case the contract was branded as a subterfuge, and the court concluded that the so-called dealer was the agent of plaintiff to sell its products in a designated territory only, and to sell at prices fixed by plaintiff, and affirmed the judgment for defendant.
In the Brown, Gann and Coen cases the decision was based on violation by plaintiff of Act No. 56 of 1914, Sec. 12, which when enacted read as follows:
“Section 12. Be it further enacted, etc., That any itinerant vendor of any drug, nostrum, ointment or application of any kind, intended for the treatment of disease or injury, or who may by *164 writing, 'print or other methods, profess to cure or treat disease or deformity by any drug, nostrum, manipulation, or other expedient in this State, shall if found guilty, be fined in any sum not less than twenty ($20) dollars and not exceeding one hundred ($100) dollars ■for each offense, to- be recovered in an action of debt, before any court of competent jurisdiction, or shall be imprisoned for a term of not less than ten (10) days or more than thirty (30) days, or be both fined and imprisoned.”
It is interesting to note that when incorporated into the LSA-Revised Statutes of 1950, section 12 as brought over in LSA-R.S. 37 ¡1288, reads as follows:
“No itinerant vendor shall profess to cure or treat disease or deformity by any drug, nostrum, manipulation, or other expedient which he may offer for sale or demonstration.
“Whoever violates this Section shall be fined not less than twenty dollars nor more than one hundred dollars for each offense, or imprisoned for not less than ten days nor more than thirty days or ■both.”
It is evident that the compilers of the Revised Statutes were influenced to make this change in Sec. 12 of Act 56 of 1914 by the enactment by the Legislature of Act 166 of 1942, LSA-R.S. of 1950, 47:369.
Plaintiff has cited the case of J. R. Watkins Company v. Rachal, La.App., 31 So.2d 871. One of the defenses raised in that case was that the contract was one of agency, and another that some of the products sold were patent medicines, the itinerant sale of which is prohibited by Sec. 12, Act No. 56 of 1914. Plaintiff filed a plea of unconstitutionality of Sec. 12, hut it was overruled. Without mentioning Act 166 of 1942 the court decided that the contract was one of seller and purchaser,. and that the dealer was not so restricted as to activities by the contract as was the case in the cases cited above, and rendered judgment in favor of plaintiff.
The oases, with the exception of J. R. Watkins Company v. Carmouche, supra, were all decided on issues not.before us in this case at this time.
The contract between plaintiff and dealer in this case is in all respects the same as the contracts in the Carmouche case and the Rachal case, and in the latter case this Court held that the contract was one of outright purchase. The defense that plaintiff is engaged in business in Louisiana without being authorized to do so was not raised in the Rachal case. This defense was the sole issue in the Carmouche case, and the First Circuit concluded from the facts developed that plaintiff is engaged in business without complying with our law.
We have been cited to numerous cases from other jurisdictions dealing with the identical question before us. To1 discuss them all would unduly lengthen this opinion, and serve no useful purpose, however we refer to two cases recently decided by Mississippi Supreme Court and Alabama Court of Appeal. The Mississippi case is Watson v. J. R. Watkins Co., 1940, 188 Miss. 435, 193 So. 913, 914, and involved a contract identical with the one before us. There the Court said:
“The question here is whether appel-lee was doing business in this state.We are of opinion that it was not. This same contract was before the court in J. R. Watkins Company v. J. W. Coleman et al., Miss., 110 So. 449, not reported in state reports; and J. R. Watkins Co. v. Poag et al., 154 Miss. 222, 122 So. 473. The court held that it was a contract of sale, not a contract of agency. In C. I. T. Corporation v. Stuart, [185] Miss. [140] 187 So. 204, the court held that a foreign corporation which sent agents into this state to solicit reserve title contracts and purchased such contracts, at its office outside the state, was not doing business within the state within the terms of our statute requiring the appointment of process agent as a condition precedent to maintenance of suit. To the same effect are North American Mortgage Company v. Hudson et al., 176 Miss. 266, 168 So. 79; Dodds v. Pyramid Securities Co., Inc. et al., 165 Miss. 269, *165 147 So. 328. The requirement that sales be reported to the seller by the purchaser does not prevent the passing of the title, nor does a provision in the contract allowing the purchaser to return unsold goods, nor does the designation of the purchaser’s sale territory. Dr. Koch Tea Company v. Malone, Tex.Civ.App., 163 S.W. 662, 663. The recent decision in Case v. Mills Novelty Company, [187] Miss. [673] 193 So. 625 [126 A.L.R. 1102], throws light on the question.”
To the same effect several cases are cited in the above opinion. The Alabama case is J. R. Watkins Co. v. Hamilton, 1946, 32 Ala.App. 361, 26 So.2d 207, where the issue is the same as the instant case, and some of the facts are the same, the case was reversed and remanded.
Defendants cite and rely on the cases of R. J. Brown Co. v. Grosjean, Supervisor of Public Accounts, 189 La. 778, 180 So. 634 and Proctor Trust Co. v. Pope, La.App., 12 So.2d 724.
In the first case the corporation had alleged that it is a foreign corporation domiciled in Missouri, and doing business in the State of Louisiana. It was demanding the recovery of kerosene taxes and penalties paid under protest. There the court had this to say [189 La. 778, 180 So. 636]:
“Plaintiff contends that it is 'not doing business in Louisiana, because it is transacting interstate business. One of the allegations of its petition is that it is doing business in Louisiana. Its report shows that it complied with the kerosene tax statute of Louisiana by filing with the collector of revenue a report of its operations in the state for the month of December, 1935, and paid the taxes due. Its Louisiana agent or representative, according to its own report, purchased from the Louisiana Oil Refining Corporation in Shreveport, La., and sold to 48 different purchasers, in carload lots, 442,501 gallons of petroleum products during the period from December 28, 1934, through December 23, 1935, and all of these transactions were conducted in the plaintiff’s name and were continuous from month to month throughout the year.
“The rule of law is that, when a foreign corporation transacts a substantial part of its ordinary business in a state, it is doing, transacting, and carrying on or engaging in business therein”. 'Citing authorities.
In the second case this court, speaking through Judge Taliaferro, had this to say [12 So.2d 727]:
“Prior to 1930 plaintiff acquired from the Security Mortgage Company of Louisiana and from a company of the same name of Texarkana, Arkansas, some fifty notes of various persons in Louisiana, which were secured by special mortgages on real estate in the Parishes of Rapides, Avoyelles, Evangeline, St. Landry, East Carroll and Concordia. Through foreclosure proceedings and dation en paiements plaintiff became the owner of about 15,— 000 acres of the mortgaged lands.
“In the year 1930 plaintiff employed Mr. Guy Sherrill of Alexandria, Rapides Parish, as its agent. He was vested with authority to look after and effect needed repairs to improvements on the cultivated portions of the land; lease said lands annually; collect and remit rents; negotiate sales; collect interest on and the principal of the original notes and those taken in connection with resales. A mineral lease on a large acreage in Avoyelles Parish was consummated in 1934 through his office and efforts. Rents and bonuses were paid to him in his fiduciary capacity. As plaintiff’s agent he provoked the action necessary to open the succession of William C. Milburn and was appointed administrator thereof. He ceased to represent plaintiff in the year 1940, at which .time it owned only some 2,000 acres of the original acquisitions amounting to 15,000 acres. Thereafter, plaintiff employed an agent in Dallas, Texas, to perform the same services which Mr. Sherrill had been *166 performing. The new agent does not maintain an office in this state but acts through sub-agents in or sent into the state.
“In addition to the foregoing, plaintiff annually paid taxes on its Louisiana property; had the benefit of the services of the same Louisiana counsel; freely invoked the aid of the courts of the state and availed itself of the laws thereof to acquire the lands against which it held mortgages, and to lease and dispose of the same. In short, plaintiff’s course of conduct in the state, with respect to its investments and property therein, was no different from that which a Louisiana banking institution would have done in like circumstances. It extended continuously over a period of more than ten (10) years and had not ceased when this suit was filed.
“The question arises: Do these various acts and the course of conduct over so many years on the part of plaintiff amount to ‘doing business’ in thi.s state? We think so.
“No act of the Legislature of this state has attempted to define or say what acts or course of conduct within the state by a foreign corporation shall constitute ‘doing business’ therein. The law making powers of other states so far as our research has extended, have not ventured to do so. The question has been left to the courts. Each case necessarily must be determined from its own facts. 23 American Jurisprudence, 335, § 361. Anent the question, on page 338 of this text book it is said:
“ ‘In any determination of the question whether a foreign corporation is doing business in the state, the fact that none of several acts or transactions, considered separately, constitute doing business is not conclusive. As stated by Mr. Justice Holmes, the court “cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole.” Thus, it has been declared that a foreign corporation may safely be said to be doing business wherever an important combination of functions is being performed, such as the ownership, possession, or control of property, * * * the exercise of discretion, the making of business decisions, the execution of contracts, the marketing of a product by advertising and solicitation, and collecting for the sold product.’
“The Supreme Court in R. J. Brown Company v. Grosjean, Superintendent of Public Accounts, 189 La. 778, 180 So. 634-636, considered and passed on facts asserted by defendant to be adequate to constitute on plaintiff’s part ‘doing business’ within the state, and in conclusion said:
“ ‘The rule of law is that, when a foreign corporation transacts a substantial part of its ordinary business in a state, it is doing, transacting, and carrying on or engaging in business therein. * * * ’
“Surely the large volume of business transacted by the plaintiff in this state over so many years, was a ‘substantial part of its ordinary business’ within the purview of the announced rule.”
Our opinion is that these cases are easily distinguishable from the case under consideration here. The percentage of plaintiff’s business in this state can hardly be denominated as a “substantial” part of its entire business. It owns no property here, and has no agent or other representative here with authority to bind it in any of its transactions.
We are of the opinion that plaintiff is not engaged in business in Louisiana so as to bring it under the provisions of Act No. 8, 3rd Extraordinary Session of 1935, LSA-R.S. 12:211. In fairness to our brothers of the First Circuit, we believe that plaintiff developed and presented the instant case much better than was done in the Carmouche case.
For the reasons assigned the judgment appealed from is annulled and set aside. The exceptions to jurisdiction and want of capacity of plaintiff to prosecute this suit *167 are overruled, and this cause is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. Defendants, appel-lees to pay the cost of this appeal. All other costs to await final determination of this cause.