McINNIS, Judge.
This is a tort action by the Administra-trix of the estate of her husband, Jesse Willard (Pete) Johnson, and as Guardian of their four minor children, demanding $40,000 for the death of her husband which was caused by an automobile-truck collision. The tragic accident resulted from the collision of a truck and trailer loaded with poles, some forty feet in length, driven by Jesse Willard Johnson, with a 1950 Mex--cui'y Club Coupe automobile, (hereinafter referred to as the Mercury), driven by Claude Goocher, defendant’s insured. As a result of the collision the two vehicles caught on fire and both drivers lost their lives by being burned to death. Three other persons riding the track were also burned to death, and their legal representatives are plaintiffs in three other suits, consolidated with this suit for trial in the district court and in this court.
*529 After exceptions of no cause and no right of action were referred to the merits, answer was filed and trial had, resulting in judgment in favor of defendant. A de-volutive appeal from the judgment is prosecuted here.
The accident happened on State Highway 70, a black-topped road, leading from Summerfield to Haynesville, Louisiana, about one-fourth of a mile from Summer-field, at about 5:00 o’clock p. m., August 31, 1951. The highway runs generally in a northwest-southeast direction. Johnson was driving the truck toward Haynesville, in a northwesterly direction. Two other persons, Thomas R. Little and Bunyan Little were riding in the cab of the truck with the driver and Arthur Lee Johnson was riding on the back of the cab. As the truck driver approached a curve, the inside of which was on the north side of the highway, two automobiles were approaching from the opposite direction, traveling toward Summerfield. One was a Ford auomobile, driven by J. W. Gray, and the other the Mercury, driven by Claude Goocher. Gray had his two year old grandson in the car with him. They are the only survivors and the grandson was too young to testify, leaving Gray as the only eye, witness to the tragedy. Gray’s version of the happening is:
“As I approached this curve I saw a log truck coming around the curve; he had practically all of the road, and looked so much like he was taking all of it, until I immediately ran in the ditch to miss the truck.' He was blowing his horn at about all it would do; it sounded almost like a siren to me; and he was continuing to blow after I passed him. So I guess I must have gone up this ditch maybe a hundred feet from where I first took it, over a culvert and about the length of the car from the culvert when I was hit by the truck. It knocked me over against a little tree .and I guess threw the boy out, and the car turned over on top and back on the side and rolled arotínd there some few minutes, it seemed to me like, but anyway when I got out everything was on fire. As I passed over the driveway that goes up to Bay’s house and got up high, I saw a car on the opposite side, I could see over, the logs. That was before I was hit. I saw this just to glance at it, and it was turning back toward Haynesville, when I saw it, and about that time I was hit, and when I got out, this car was fastened under, someway, up there.
“They was all burning so much I expect I was probably a minute or two getting out of the car. I didn’t see anyone; there was so much fire and smoke, all I heard wa.s the cries of some man in the flames down there, but I still couldn’t see him. I guess I must have stood there some five minutes until people began to come in, and then I left.
“I didn’t know any car was behind me at all. I didn’t see it. It is a little up grade there, and the truck had just come over that grade, and I thought he had all of the road; probably lacked two feet of having all of the black-top, and when I saw the predicament I was in, I just immediately took the ditch.”
In answer to questions he estimated the speed of the truck at 35 miles. He said it was not going fast. He thinks the truck traveled 30 or 40 feet after it struck him. He says he was completely off the blacktop when his car was struck by some part of the truck.
Plaintiff charges that the accident resulted solely from the gross negligence of Claude Goocher in driving his automobile in a reckless manner in the following respects :
“1. Petitioner is informed and believes and on such information and belief alleges that immediately prior to and at the time of said accident, Claude Goocher was proceeding at an excessive rate of speed in a Southeasterly direction along Highway No. 70 Claiborne Parish, Louisiana, traveling in the direction of Summerfield, Louisiana.
“2. Petitioner is informed and believes and on such information and be *530 lief alleges that immediately prior to and at the time of said accident, Claude Goocher was intoxicated and under the influence of intoxicating beverages and was driving his vehicle in a reckless manner.
“3. Petitioner is informed and believes and on such information and belief alleges that said Claude Goocher attempted to pass an automobile on a curve and that said Claude Goocher failed to keep a proper lookout for the area toward which he was speeding.”
Defendant answered, denying the substantial allegations of the petition and alleging that the driver of the truck and the other men, riding with him, were joint adventurers, having a common interest in the performance of the mission in which they were engaged, with joint responsibility for expenses, and the right to joint control over the operation of the log truck and after setting forth defendant’s version of the manner in which the accident happened, alleges that the negligence of the truck driver and his joint adventurers was the proximate cause of the accident, in the following particular, but not exclusive, respects :
“(a) In driving on the wrong, or left hand side of the highway in violation of rules of common prudence and of the Rules of the Road of the State of Louisiana;
“(b) In driving around a curve, where visibility was limited, at a reckless and excessive rate of speed of approximately 45 miles per hour on a down-hill grade in a heavily loaded truck and trailer;
“(c) In failing to maintain a careful and proper lookout for other vehicles using the highway, such as the automobiles of Messrs. Gray and Goocher;
“(d) In failing to have said truck-trailer combination under careful and proper control, as required by law;
“(e) In failing to slow, stop or turn aside so as to avoid the collision;
“(f) In effectively blocking the highway to on-coming traffic;
“(g) In failing to sound a horn or give other audible warning of its approach.”
It is alleged in the alternative, and only in the event Goocher was negligent in any respect, that no recovery can be had because of contributory negligence of the truck driver and those riding with him, in the respects set forth above.
Plaintiff offered other witnesses in support of her theory of the cause of the accident.
Lynn Stagg saw Goocher in the G. & G. Grocery Store at Haynesville about 4:00 o’clock p. m., August 31, 1951. Goocher asked the witness to buy him a can of beer, and the witness told him he didn’t need it, and Goocher told him he already had a can. It was stipulated that Glenn Stagg, brother of Lynn, was present at the same time and would testify the same as Lynn Stagg.
It is stipulated, subject to the objection that it has no relevancy, because of the time element, that Doyne Jerry, who lives on the Junction City-El Dorado road would testify that at 9:00 o’clock a. m. on August 31, 1951, Goocher stopped at his (Jerry’s) place and had one can of beer and, at that time, did not appear to be drunk; and that Ernest Rogers, who lives on the Playnesville-E1 Dorado road, would testify that about noon on the same day Goocher had one can of beer at his (Rogers’) place, and did not appear to be drunk.
A colored man named Jeff Levingston, living about six miles toward Haynesville from the scene of the accident says he saw Goocher pass his home a short time before the accident, going toward Summerfield, driving very fast — faster he says, than he ever saw an automobile travel before. It was stipulated that Josie Levingston, wife of Jeff, would testify the same as her husband.
Greer Odom has lived in Colquitt, nine miles from Summei-field for 35 years. He saw á car pass by the store at Colquitt, but could not say who was driving. The son of Shot Hayes said “Daddy there goes Uncle Hoot now”, and Hayes said, “Well we will catch him”, and took after the car *531 that had just passed, which he says was being driven about 65 miles an hour.
O. W. Thurmond was driving from Haynesville to Summerheld on the day in question. He was driving about 60 miles an hour, and Mr. Hayes passed him going in the same direction, that is, toward Sum-merfield. When he reached a point about a mile from the scene of the accident he saw smoke, and in three or four minutes reached the scene, and stopped some distance back, far enough for his car to be safe, got out and walked up there, and the first thing he saw was Arthur Lee Johnson over on the side of the road, hollering and taking on. His son, Hugh Thurmond, and Cecil and Luther Strand were with him. Every one was excited and he did not pay much attention to the people. His son, Hugh, was in a pickup truck and had a Negro with him. He also saw Mr. Hayes and his car there. The Negro was the first person to reach Johnson. Johnson’s clothes were burned off him, except a piece of his shirt that the Negro pulled off him. It was still burning when the Negro got to him. He saw one other man lying right in front of the truck, and he lay there and gasped for breath two or three times. This man was burned all over and his clothes, except his shoes, were burned off him. The truck had been struck on its right hand side and was on its left side of the road. The right front wheel was knocked off, and the fender, radiator and hood were all torn up on the right side. The left side of the front of the truck was not more than two feet from the left side of the road. The back wheels of the truck, and the trailer were further from the left side of the road. The witness asked Arthur Lee Johnson, who died about nine hours later, how it happened, and he answered that he was riding on top of the piling, and was thrown clear of everything, and not hurt too bad and went back to the truck to try to help the people in the truck, and something blew up and blew the fire all over him and burned him, and Johnson said the cars were so close together that his son was trying to get between the two cars, but he couldn’t make it. On cross examination this witness was shown a statement he signed for an insurance adjuster, in which he stated that though Johnson was in great pain he talked rational, and that he said, “that car was following so close behind that we couldn’t”, and that from there he rambled. We do not believe the testimony of Mr. Thurmond is affected thereby.
Hugh Thurmond saw Johnson by the side of the road and thought he -might be able to help him, and some four or five people went to him and made arrangements to get him to a hospital. Johnson made the statement that he was riding on top of the truck cab, and the cars were so close together that they could not go between them. He kept repeating that statement over and over, and that was about the only statement he could get from him, other than his home address' and telephone number and a few of those things.
Plaintiff’s theory of this case is that Goocher was speeding along, intoxicated, overtook Gray and undertook to pass him on this curve, and that the driver of the truck, seeing this, and knowing that Goocher would not be able to pass Gray and get back on his right side of the road, pulled his truck to the left and commenced to blow the horn' of the truck to try to warn Goocher not to come around Gray, but that Goocher continued on, and Gray having left the highway, the truck driver undertook to pass Goocher by taking the left side of the road.
The impressive brief by plaintiff’s counsel, citing many authorities, draws their conclusion of the manner in which the accident happened in such a convincing way that if there was evidence to support these conclusions, would lead us to believe that the theory of plaintiff is correct. We are impressed with the probability that plaintiff’s theory is correct, however, plaintiff is required to do more than make it probable that the accident occurred as contended. It must, at least, be supported by a preponderance of the evidence.
Defendant’s theory is that the truck driver came around this slight curve on his left side of the road, or at least in the middle of the road, creating an emergency which Gray undertook to escape by taking the ditch on the right hand side of the *532 road, and that Goocher undertook to escape by trying to go by the truck on the left side of the road. And of course, defendant also relies on what it terms the failure of plaintiff to meet the burden of. proving the case by a preponderance of the evidence.
The district judge has not favored us with written reasons for his judgment, however, in his decree he says: “that the plaintiff has failed to sustain the burden of proving any negligence whatsoever on the part of Claude Goocher, in conection with the accident”, and further found, “That the sole proximate cause of said accident was the negligence of the. driver of the truck, in operating the log truck on the wrong side of the road, thus creating an emergency * * *
 The judge of the lower court saw and heard the witnesses, and is in better position to appraise the facts than we are, and his finding of fact is not to be disturbed, unless we find that he is manifestly in error, and, in view of the condition of the record, as to proof, we.are not able to say that he is in error. It is regretable that the people best qualified to explain the facts all died in the tragic accident. Mr. Gray,' the only adult survivor, never saw the Goocher automobile until after it collided with the truck, and does not know whether, as surmised by plaintiff, it was trying to pass him or not.
For these reasons, the judgment of the district court is affirmed at the cost of plaintiff-appellant in both courts.