71 So.2d 613 (1954)
JOHNSON et al.
v.
EL DORADO CREOSOTING CO. et al.
No. 8120.
Court of Appeal of Louisiana, Second Circuit.
March 24, 1954.
Rehearing Denied April 22, 1954.
Writ of Certiorari Granted May 31, 1954.
*614 Booth, Lockard, Jack & Pleasant, Shreveport, for El Dorado Creosoting Co.
Gravel & Downs, Alexandria, for Coal Operators Cas. Co.
Spencer & Spencer, El Dorado, Ark., Jackson & Reynolds, Homer, for Johnson and others.
GLADNEY, Judge.
This is one of four consolidated appeals from judgments in each of which an award was made under the Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., against El Dorado Creosoting Company, but the demand against its insurer, Coal Operators Casualty Company, was rejected. The claim sued upon arises from fatal injuries received by Jesse Willard Johnson on August 31, 1951, when his truck collided with an automobile in Claiborne Parish. This court in, Johnson v. Houston Fire & Cas. Co., La.App., 66 So.2d 528 gave consideration to certain tort claims involving this accident.
The action was originally filed by Mrs. Jewell Terrell Johnson as administratrix of the Succession of Jesse Willard Johnson, but petitioner amended after issue was joined to present herself before the court in the capacity of widow and guardian of the named minor children. Made defendants are the El Dorado Creosoting Company, Inc. and its compensation insurer, Coal Operators Casualty Company.
The El Dorado Creosoting Company, Inc., for brevity hereinafter referred to as El Dorado, was served through substituted process as prescribed in the Louisiana statute. Exceptions to jurisdiction ratione personae and ratione materiae were specially pleaded and are properly raised here. Defendants presented also exceptions of no cause and no right of action. All of the pleas were overruled.
Johnson's business relationship with El Dorado is not disputed. He was engaged as an independent contractor to cut and haul poles to its plant at El Dorado, Arkansas. His compensation was measured on a per stick basis as determined upon delivery. Johnson used his own tools and trucks, and employed and supervised all the labor used in the undertakings. He and his employees were residents of Arkansas wherein *615 all the contracts of employment were made. The El Dorado Creosoting Company has no other place of business than at El Dorado, Arkansas, although it obtained some timber in the States of Mississippi and Louisiana. Johnson was hauling poles to the El Dorado plant when he met his death.
The first assignment of error concerns the allowance of the amendment permitting plaintiff to appear in the capacity of widow and guardian of her minor children. Respondents cite article 419 of the Code of Practice; Curacel v. Coulon, 2 Mart. (O. S.) 143; McRae's Administratrix v. McRae, 1838, 11 La. 571; Paramore v. Continental Bank & Trust Co., 1929, 168 La. 774, 123 So. 321, to the effect that after issue is joined plaintiff may not amend to alter the substance of the demand by making it different from the one originally brought. The instant cause presented, however, is for recovery under the Workmen's Compensation Act in which statute the courts of this state are enjoined against dismissals of claims upon technicalities. Our jurisprudence has taken a liberal view of pleadings in a workmen's compensation suit and permits amendments conducive to equity and justice wherever such amendments will aid in the ascertainment of truth. As a consequence of these rulings amendments in such cases have been allowed even after submission of the case for judgment. The cited cases are deemed without application and the assignment of error is without merit upon the following authorities: LS A-R.S. 23:1204, 23:1311, 23:1314, 23:1318; Camet v. Aetna Insurance Co., La.App., 1937, 175 So. 152; Mitchell v. Sklar, La.App., 1940, 196 So. 392; Clark v. Employers Liability Assurance Corporation, La.App., 1946, 27 So.2d 464; Reagor v. First National Life Insurance Co., 1948, 212 La. 789, 33 So.2d 521.
The exception to the jurisdiction of the court ratione personae denies the validity of the service of process had upon El Dorado through the Secretary of State in accordance with LSA-R.S. 13:3471(5) (d). The section of the statute provides that where a foreign corporation has not appointed an agent for service of process but has engaged in business activities in the state, service of process may be had, in any proceeding arising from or relating to such acts performed in this state, by service upon the Secretary of State.
The exception is predicated on the due process clause of the Fourteenth Amendment to the Federal Constitution. The historic doctrine of Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572, holds that defendant's presence in the territorial jurisdiction of the court is a prerequisite to the rendition of a judgment personally binding him. But now it may be said that to a certain extent the rigidity of the above rule was relaxed in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, where it was stated that in order to subject a defendant to a judgment in personam, if he be not present in the territory of the forum, he must be found to have certain minimum contacts with such that the maintenance of the suit does not offend notions of fair play and justice. The court said, 66 S.Ct. 154, 160, 161 A.L.R. 1057, 1063:
"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff [95 U.S. 714, 24 L.Ed. 565], supra; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.
"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to *616 a suit brought to enforce them can, in most instances, hardly be said to be undue."
In announcing the quoted rule the Supreme Court of the United States undertook to review its previous jurisprudence upon the subject matter. We have summarized below its holdings without reference to the authorities cited therein.
The rule of "presence" has been consistently recognized when the activities of the corporation within the state have not only been continuous and systematic, but also give rise to the liability sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. Conversely, the casual presence of the corporate agent or conduct of single or isolated activities in a state on behalf of the corporation have been held insufficient to subject it to suit on causes of action unconnected with the activities therein. In some instances continuous activity unrelated to engagement in active business within the state of the forum has been held not to subject the corporation to valid process. Yet even where the instances have been few but continuous and of a substantial nature, jurisdiction has been maintained. It is pointed out that to the extent a corporation exercises the privilege of conducting activities in a state it enjoys the benefit and protection of the laws of that state and in the exercise of that privilege obligations may arise, and, insofar as those obligations arise out of or are connected with the activities within a state, the corporation should be held to respond to a suit brought to enforce such responsibilities.
The general rules above stated have found application in a number of decisions arising within the State of Louisiana. In the following cases the corporation was held to have transacted business of such a nature that it was deemed to be doing business within the statutory requirements:
United Oil & Natural Gas Products Corporation v. United Carbon Co., 1930, 171 La. 374, 131 So. 52; Harnischfeger Sale Corporation v. Sternberg Co., Inc., 1934, 179 La. 317, 154 So. 10; R. J. Brown Company v. Grosjean, Supervisor of Public Accounts, 1938, 189 La. 778, 180 So. 634; Proctor Trust Company v. Pope, La.App., 1943, 12 So.2d 724; J. R. Watkins Co. v. Stanford, La.App., 1951, 52 So.2d 325.
In other cases the decision has turned upon a finding that the defendant was not present within the state. See:
Premeaux v. Henry Ford & Son, Inc., 1923-1924, 155 La. 106, 98 So. 856; Schultz v. Long Island Machinery Equipment Company, Inc., La.App., 1937, 173 So. 569; Norm Advertising, Inc. v. Parker, La.App., 1937, 172 So. 586; J. R. Watkins Co. v. Godeau, La.App., 1953, 63 So.2d 161.
In Harnischfeger Sale Corporation v. Sternberg Company, Inc., supra, the defendant was held to be doing business in the state within our statute governing service of process though it had only one contract, which was to build a levee within the state. Jurisdiction was maintained, however, because the contract necessitated numerous subsidiary contracts which required it to do a substantial amount of business within the state. In United Oil & Natural Gas Products Corporation v. United Carbon Company, plaintiff sold defendant its entire business and appointed an agent within the state, and, accordingly, the exception to the jurisdiction was held to be without merit. The court therein stated that the term "the business done by said corporation in this state" [171 La. 374, 131 So. 54] should not be construed to mean the single transaction by which the liability was incurred, but to comprehend business done generally by the corporation in this state, by the doing of which the corporation is deemed to be in the state, under the protection of the laws of the state and subject to the jurisdiction of the courts of the state.
The opinion of the court in R. J. Brown v. Grosjean, Supervisor of Public Accounts, declared: "The rule of law is that, when a foreign corporation transacts a substantial part of its ordinary business in a state, it is doing, transacting, and carrying on or engaging *617 in business therein. * * *" [189 La. 778, 180 So. 636.] In that case the court found plaintiff had transacted a very large volume of business over a number of years and such business was a substantial part of its ordinary business. A similar conclusion was reached in Proctor Trust Company v. Pope, the facts of which revealed that the plaintiff, a foreign corporation, domiciled in Vermont, acquired mortgage notes of various persons in Louisiana, and through foreclosure proceedings and dation en paiements became the owner of about 15,000 acres of mortgaged lands. Plaintiff annually paid taxes on its Louisiana property, enjoyed the service of Louisiana counsel and for over a period of ten years conducted said business which was likened to that of a Louisiana banking institution. The court held that such a large volume of business constituted a substantial part of the ordinary business under the rule announced in R. J. Brown Company v. Grosjean, supra. Our brother of the First Circuit Court in J. R. Watkins Company v. Stanford, held plaintiff to be transacting business within the state without having an agent for the service of process herein and invoked the penalty provided by statute denying plaintiff the right to institute suit. In a similar suit J. R. Watkins Company v. Godeau, this court, basing its decision upon a better presentation of the facts, concluded that the same corporation was not engaged in business activities within the state so that it could be said to be doing business within the state under and subject to our statutes requiring the appointment of a resident agent.
The Louisiana Supreme Court held in Premeaux v. Henry Ford & Son, Inc., that it was without jurisdiction where defendant's only business within the State of Louisiana consisted only of selling its products within the State of Louisiana, and such products were paid for at point of shipment, Detroit, Michigan. In Norm Advertising, Inc., v. Parker, plaintiff which had solicitors within the state for a number of years, but engaged only in interstate business was held not to be engaged in business in the state, within the purview of the statute. This appellate court in Schultz v. Long Island Machinery Equipment Company, Inc., affirmed a judgment of dismissal for want of jurisdiction, the court finding that the defendant came into Louisiana only casually and intermittently and for the limited purpose of purchasing and shipping scrap iron or steel out of the state. The defendant was a New York corporation, was not licensed to do business in the State of Louisiana, had no agents for any purpose who were residents of the State of Louisiana and maintained no office or place of business of any kind in Louisiana. The agreed state of facts stated that defendant had been engaged in purchasing iron and steel in this state, inspecting it, and shipping it out for several years.
The application of the proper rule depends upon the facts in each particular case, so much so, in fact, that it is difficult to say that any one of the cited decisions may be said to be complete authority for a ruling in the instant case. The necessity for sufficient evidence upon which to base a judgment was recognized in Lake Superior Piling Co., Inc. v. Stevens, La.App., 1946, 25 So.2d 120, which case was remanded for further evidence from which it could be determined whether the foreign corporation was engaged in business within the state. Judge Le Blanc there approved the principle found in American Jurisprudence, Volume 23, page 359, par. 372: "That the mere ownership of property in the state, unaccompanied by its active use in furtherance of the business for which the corporation was formed, is insufficient within itself * * * to constitute doing business in the state * * *", stating that it is contemplated that more than mere ownership should be considered in order to determine the question.
Turning now to the evidence adduced upon the trial of the exception, we find that the activities of the defendant corporation in Louisiana extended over a period of less than two years and there is no record of transactions in the state subsequent to the fatal accident to Johnson. The corporation had no agents of any kind within the State of Louisiana at the time the suit was filed *618 or at the time the timber was being removed by Johnson. Davis, a representative of El Dorado, had arranged the purchase of certain poles which were spotted for removal. The operations in removing the poles and transporting them to respondent's plant at El Dorado were operations entirely conducted by the independent contractor, Jesse Willard Johnson. Some poles were also purchased, during the time aforesaid, in Union and Webster Parishes. The timber being removed from the Kinard property at the time of Johnson's death aggregated 670 poles. El Dorado had also caused to be purchased and removed some 782 poles from the property of Mr. Kennedy in Claiborne Parish. Fulkerson, a witness for the defendant, testified that about 700 poles were cut from government property in Webster Parish. There is some evidence also that El Dorado shipped some finished products to Marion, Many and Junction City, towns within Louisiana. The record does not show El Dorado ever had any employees within the state other than in connection with the movement of timber from Louisiana to its plant in Arkansas. It does not appear any of its employees were residents of the State of Louisiana, or remained in this state for the conducting of any of its business.
Clearly, the evidence indicates all the transactions testified to involved interstate shipments between the several parishes in Louisiana and the Arkansas plant. Such timber, as the record shows, was handled in Louisiana by independent contractors such as Johnson. Thus the corporation's intrastate activities can be said to have been virtually non-existent.
Ownership of some scattered timber alone does not subject it to the jurisdiction of our courts. Its conduct within the state does not seem to have been as extensive as that held by this court in Schultz v. Long Island Machinery Equipment Company, Inc., supra, as being insufficient to subject the foreign corporation to jurisdiction.
We are of the opinion that the aggregate of business activity by El Dorado Creosoting Company is insufficient to constitute doing business within the State of Louisiana so as to validly subject it to service of process within the State of Louisiana. The exception to the jurisdiction ratione personae should have been maintained as to the El Dorado Creosoting Company, Inc.
El Dorado further makes the point it was doing no business of any kind at the time of the filing of suit, nor has it conducted any activity within Louisiana after August 31, 1951, citing in support of this contention, Gouner v. Missouri Valley Bridge & Iron Co., 1909, 123 La. 964, 49 So. 657. In that case defendant withdrew its agent for process and quit entirely. Here, as we see it, El Dorado was never amenable to process of service because its activities within the state cannot be said to have been of a substantial nature and we prefer to rest our opinion on this ground.
The Coal Operators Casualty Company has not urged on the appeal its exception of jurisdiction ratione personae, and produced no evidence of its absence from the state at the time of service. We, therefore, conclude it does not rely upon this as a defense.
Though we might well rest on our labors here, in order that our views on all important issues may be subject to review, we proceed to a consideration of the exception to the jurisdiction ratione materiae, which poses the same legal issues as do the exceptions of no cause and no right of action. As we understand both arguments, the courts of Louisiana in this state must grant full faith and credit to the Workmen's Compensation Act of Arkansas, Ark. Stats. § 81-1301 et seq., because the parties are residents of that state and contracted there with reference to its laws, and, going further, it is urged that since only the injury or harm took place in Louisiana while Johnson was on a more or less temporary undertaking, this state does not have the paramount interest which is with the State of Arkansas.
Appellant's contention is pitched upon the ruling in Bradford Electric Light Co. v. Clapper, 1932, 286 U.S. 145, 52 S.Ct. 571, 76 *619 L.Ed 1026, 82 A.L.R. 696, which assumed in effect, that the single factor, locus of injury, was not enough to permit assertion of coverage by a state, at least when the employee's presence in the state was only incidental and temporary. The cited case, however, has been substantially overruled by later federal cases and particularly Pacific Employers Insurance Company v. Independent Accident Commission, 1939, 306 U. S. 493, 59 S.Ct. 629, 633, 83 L.Ed. 940, wherein the court said:
"* * * few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power * * * [than] the bodily safety and economic protection of employees injured within it."
We are of the opinion the ruling of Pacific Employers Insurance Company v. Independent Accident Commission, supra, is decisive. This view is further supported by Bagnel v. Springfield Sand & Tile Co., 1 Cir., 1944, 144 F.2d 65, wherein the Massachusetts law was applied in an action brought in that state by a New York employee temporarily at work in Massachusetts, and by the ruling in Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 88 L.Ed. 149, 64 S.Ct. 208, 150 A.L.R. 413, upholding the right of the State of Texas, where the injury occurred, to adjudicate the case though the contract of employment was entered into in Louisiana.
No Louisiana cases in point have been brought to our attention, nor has our research unearthed any. Counsel for claimant refer in their brief to McKane v. New Amsterdam Casualty Co., La.App., 1940, 199 So. 175, and Williams v. Travelers Insurance Company, La.App., 1944, 19 So.2d 586, but the facts of these cases are inapposite. We are in accord with the decree overruling the exceptions to jurisdiction ratione materiae and of no cause and of no right of action.
Plaintiff, on her appeal, seeks reversal of the judgment insofar as it rejects her demands against the Coal Operators Casualty Company, the insurer of El Dorado, and the latter also desires the same decision should the judgment against it be affirmed. Coal's defense is that its liability under its policy issued El Dorado is prescribed by the terms and subject only to the broadening effect of the Workmen's Compensation Act of Arkansas, which contains the following provisions:
"No policy of insurance shall be issued against liability under this Act unless such policy cover the entire liability of the employer as to the business or businesses identified in the policy. As to any questions of liability between the employer and the insurer the terms of the policy shall govern." Ark.Stats. § 81-1338.
Pertinent provisions of the subject policy are:
"Locations of all factories, shops, yards, buildings, premises or other work places of this Employer, by Town or City with Street and Number, one mile south of El Dorado, Arkansas on South Field Road and elsewhere in the State of Arkansas.

* * * * * *
"Item 4. This Employer is conducting no other business operations at this or any other location not herein disclosedexcept as herein stated: No exceptions

* * * * * *
"Coal Operators Casualty Company does hereby agree with this Employer, named and described as such in the Declarations forming a part hereof, as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:
"I. (a) To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due.
"(1) To such person because of the obligation for compensation for any *620 such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and
"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury whatever funeral expenses are required by the provisions of such Workmen's Compensation Law.
"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remains a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force. Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached."

* * * * * *
"Coal Operators Casualty Co. Arkansas Workmen's Compensation Endorsement No. 1 For Attachment To Standard Workmen's Compensation and Employers' Liability Policy when insurance is afforded under the Workmen's Compensation Act of Arkansas to complete the contract as provided in the Policy.
"1. The obligations of Paragraph One (a) of the Policy apply to the Workmen's Compensation Law herein cited: Act 319 of the Acts of 1939, State of Arkansas, as amended by Act 121 of the Acts of 1941 and by Initiated Act 4 adopted by the people at the General Election held November 2, 1948, known and cited as the `Workmen's Compensation Law', and all laws amendatory thereof or supplementary thereto which are or may become effective during the Policy Period, hereinafter referred to as `this Act'."

* * * * * *
"One (b) to indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."
The policy coverage undoubtedly extends to proper claims of employees of its assured irrespective of the place of injury as provided for by clause one (b) above. But can it be said the insurer undertook to hold its policy holder safe from claims under any compensation act in the United States, and especially where the Arkansas act would not classify the claimant as an employee under its act? The Arkansas statute denies the liability of the principal contractor to an independent contractor and his employees, and so differs from our Act which permits recovery within some limitations. Petitioners herein, thus would not have a valid claim under the Arkansas statute. The following authorities support the argument of the insurer and represent our view of the contract relationship between the insurer and insured:
Hurt v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co., 1938, 175 Md. 403, 2 A.2d 402; Salkind v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co., 1939, 335 Pa. 326, 6 A.2d 301; Pennsylvania Manufacturers' Casualty Ins. Co. v. Schmerbeck, 1942, 128 N.J.L. 180, 24 A.2d 573; Federal Underwriters Exchange v. Doyle, 1937, Tex.Civ.App., 110 S.W.2d 618.
It follows, therefore, that there is no error from the judgment's recognition that plaintiff's claim does not fall within the legal limits of liability imposed by the subject policy.
The judgment from which appealed is reversed and set aside insofar as it overruled *621 the exception to the jurisdiction ratione personae filed by the El Dorado Creosoting Company, Inc., and it is ordered that said exception be sustained as to the above named defendant, and plaintiff's suit be and is hereby dismissed as of non-suit at plaintiff's cost. In all other respects the judgment is affirmed at plaintiff's cost.
AYRES, J., is recused.