**Mr. and Mrs. A. T. STANGA, Appellants,**

v.

**McCORMICK SHIPPING CORPORATION, Appellee.**

No. 17491.

United States Court of Appeals
Fifth Circuit.

June 25, 1959.

Rehearing Denied July 24, 1959.

John R. Brown, Circuit Judge, dissented in part.

William McM. King, Thomas J. Meunier, Ellis, Lancaster, Daly & King, Dodd, Hirsch, Barker & Meunier, New Orleans, La., for appellants.

Andrew R. Martinez, William E. Wright, New Orleans, La., Terriberry, Rault, Carroll, Martinez & Yancey, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The basic questions here are (1) whether service of process upon a local travel agency which has booked the space, and executed and issued the passage ticket for a voyage wholly outside of Louisiana is valid as to the nonresident steamship company in a passenger's suit for injuries, and (2) if not, was the District Court right in ordering a final dismissal.

As the Court is not unanimous as to the correctness of the District Court's action in setting aside the particular service of process, this opinion is constructed in subparts to more clearly indicate its action. Chief Judge HUTCHESON and Judge BROWN are in substantial agreement with Parts I through VIII. In Part IX Chief Judge HUTCHESON and Judge CAMERON, who concurs in the result, affirm the holding on validity of the service of process, as to which Judge BROWN'S dissent is set forth in Part X. Part XI is Judge BROWN'S separate opinion on an issue the majority of this Court does not reach. In Part XII we reverse the action of the District Court in entering a final order of dismissal.

I.

Mrs. A. T. Stanga purchased a ticket for a round trip cruise from Miami, Florida to Havana, Cuba and Nassau aboard McCormick Shipping Corporation's SS Yarmouth Castle from the D. H. Holmes Travel Bureau in New Orleans, Louisiana. The ticket was purchased August 22, 1957, and the cruise left as scheduled from Miami on August 30. Unfortunately, while on board Mrs. Stanga alleges that her "shoe caught on the defective and unseaworthy metal stripping on a step of the stairway leading to the dining hall * * * catapulting her down the flight of stairs to the landing, below, * * *."

But as we indicate by our introductory question, this fact situation which

raises the usual questions of shipowner's liability for personal injury has not been reached because of preliminary questions as to the adequacy of service of process. McCormick contends that the Holmes Travel Bureau was not a proper agent of McCormick for service. The District Court granted McCormick's motion to quash the process and thereafter dismissed the case for want of jurisdiction.

## II.

As this case comes to us on affidavits, the facts relevant to service of process may be briefly summarized. McCormick is not a Louisiana corporation. It has not qualified to do business in Louisiana as a foreign corporation, LSA–Rev.Stat. § 12:202, nor appointed an agent for service of process in Louisiana as that section would require. It has no offices in Louisiana. It has no agents or employees in Louisiana—unless one turns out to be the Holmes Travel Bureau. None of its ships has ever been in New Orleans or other Louisiana ports.

■ McCormick is a Panamanian corporation. It has appointed Eastern Shipping Corporation in Miami, Florida as its limited general agent, under contract to sell space on the Panamanian SS Yarmouth Castle and Liberian SS Evangeliane, and to purchase stores for the ships, repair them, handle the payroll, deal with the Port Authorities, and lease necessary dock, warehouse and office space. It authorized Eastern to promote "sales of tickets through other agencies." There is no indication of how many travel agencies have been furnished with McCormick tickets by Eastern, but we may take judicial notice of the fact that there are thousands of travel agencies in this country and abroad capable of arranging for space with as many transportation companies.

■ Of course, McCormick and Eastern denied that Holmes Travel Bureau was an "employee" or "agent" of McCormick or Eastern. But their conclusions do not preclude our evaluation of the facts. See J. R. Watkins Co. v. Stanford, La.App.1951, 52 So.2d 325, 330.

There was no evidence of any written contract or agreement between Eastern and Holmes. Whoever may have initiated the action, Eastern sent Holmes a supply of blank "passage contract forms." McCormick and Eastern press hard the fact that Eastern had to approve the assignment of all space for passengers dealing with Holmes. This is correct as to the space, but as a practical matter Eastern did not undertake to pass on the individuals as all of Holmes' clients were apparently satisfactory to Eastern if space were open on the voyage. In fact, Mrs. Scully's (Mrs. Stanga's daughter who purchased the ticket for her) affidavit indicates that Holmes first gave her information and literature. Later at her request Holmes checked on space for Mrs. Stanga and three relatives. When she subsequently decided to purchase the ticket for the four passengers, Holmes handled the entire transaction for her in New Orleans by issuing the ticket in return for payment by her check for the full fare.

The passage ticket is headed "McCormick Shipping Corporation/Eastern Shipping Corporation, agents/Cruise Ticket/Passenger's Receipt," and there is a blank at the bottom where the contract is to be signed by an "Agent." The name "D. H. Holmes Travel Bureau" is typed above that blank on Mrs. Stanga's ticket No. C13779 which is then signed by Mr. W. H. Worden, Sr., one of the partners operating the Holmes Travel Bureau. On the reverse side of the ticket proper was a contract between "Carrier" and "Passenger" in twenty numbered clauses and about 4,000 words. At the bottom there was a place for the "Passenger's signature" which was signed by Mrs. A. T. Stanga. There was also the following: "McCormick Shipping Corporation/Eastern Shipping Corporation, Agent/by: .........../Agent's Signature." Again, this was signed by Mr. W. H. Worden, Sr., as the agent of McCormick and Eastern.

Mr. James L. McCall, the other partner of Holmes, stated in his affidavit that a United States Deputy Marshal

left a "Summons and Complaint" with him on June 3, 1958. It was directed to McCormick, and he was requested to send it on to Eastern, which he did. McCormick therefore had actual notice of the suit.

## III.

As Holmes clearly was not a person described in F.R.Civ.P. 4(d) (3), 28 U.S.C.A. validity of the service of process depends wholly on it having been "served * * * in the manner prescribed by the law of the state in which the service is made for the service of summons * * * upon any such defendant * *."

■ Thus have we come face to face with the law of Louisiana. The Louisiana law, the background and development of which is set forth in Comment, 14 La.L.Rev. 625 (1954), provides for both (1) a foreign corporation which has, or should have, appointed an agent for receiving service of process, LSA–Rev.Stat. § 13:3471(5) (a–c), and (2) a foreign corporation which is not required to appoint an agent under Louisiana law. § 13:3471(5) (d). In the former case three methods are possible: (a) service upon the designated agent, (b) service upon any agent or employee over eighteen in any office maintained by the corporation in Louisiana, if the designated agent is not available, or (c) if neither the designated agent nor any agent or employee is available, then service may be made upon the Secretary of State.

■ In situation (2), of a foreign corporation not required to designate an agent, Section 3471(5) (d),[1] added by amendment in 1950, provides that service may be made upon any employee or agent of the foreign corporation if (i) it is carrying on business activities within the state, (ii) through its own employees or agents, and (iii) the cause of action results from or relates to acts performed in the State. Each of these requirements raises its own question. Was Holmes an employee or agent? Was McCormick carrying on business activities in Louisiana? Did the cause of action relate to an act performed in Louisiana?

## IV.

■ In determining the sufficiency and validity of service of process on a foreign corporation under laws of the forum state, the problem divides itself along lines of state and national interest. The first part is to ascertain whether the state law means to encompass the challenged service. This question—at least as to diversity cases which this one is— is wholly a matter of state law, Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, 153; Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, 194; Rosenthal v. Frankfort Distillers Corporation, 5 Cir., 1951, 193 F.2d 137, 141. The second is conditioned on an affirmative answer to the first, and then presents the problem whether the state law as thus applied offends the Federal Constitution.

As a practical matter, the field soon narrows down to the effect and application of the 1950 Amendment, § 3471(5) (d), note 1, supra, concerning a foreign corporation "not one required by law to appoint an agent for service of process." Nothing is accomplished by inquiring whether McCormick was "doing business" within the State of Louisiana so as to be subject to LSA–Rev.Stat. §§ 12:-202 and 13:3471(5) (a–c). If a foreign corporation is "doing business" under Section 202 and 3471, it certainly in-

---

1. "(d) If the corporation is not one required by law to appoint an agent for service of process but has engaged in business activities in this state through acts performed by its employees or agents in this state, service of process in any proceeding on a cause of action resulting from or relating to such acts performed in this State or any taxes or other obli- gations arising therefrom may be made on any employee or agent of the corporation * * * found in this state, or in the event such employees or agents are no longer in this state or cannot be found * * * the judge * * * shall order service to be made on the Secretary of State * * *." LSA–Rev.Stat. § 13:3471(5) (d).

cludes the lesser standard of one which "has engaged in business activities * * * through acts performed by its employees or agents in this state" under Section 3471(5) (d). But a conclusion of "doing business" is itself inadequate since Louisiana has long declared that the appointment of a process agent for such a corporation covers only a cause of action which arises out of or is connected with business done in Louisiana. "Even when present and amenable to suit it may not, unless it has consented * * *, be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction * * *." Staley-Wynne Oil Corp. v. Loring Oil Co., 1935, 182 La. 1007, 1018, 162 So. 756, 759. The result is that either as a corporation "doing business" under Section 202, or as one which "has engaged in business activities," the cause of action must, as the former law held, and the 1950 amendment expressly declares, be one "resulting from or relating to such acts performed in this State * *."

### V.

Since one of the accepted canons of statutory construction is to look to the supposed evil to be remedied, the meaning and application which Louisiana intends to accord to Section 3471(5) (d) can best be judged in the light of Louisiana's experience with this vexing problem.

Unlike Mississippi, see Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 1953, 201 F.2d 233, and many other states, 23 Am.Jur., Foreign Corporation § 362 (1939) Louisiana has not fashioned separate tests for (a) the power to regulate and tax a foreign corporation carrying on some business within its borders, and (b) subjecting it to local process for suit. A common requirement of both, covered expressly in Section 12:-202, is that a foreign corporation "doing business" in Louisiana must first qualify and obtain a permit as a condition precedent to filing suit. Indeed, the Louisiana rule on "doing business" has arisen as frequently as an asserted bar to the foreign corporation suing as a plaintiff[2] as it has as a basis for a plea to quash service of process.[3]

This not only presented Louisiana with hard choices, but it ignored a real difference. "This difference," we have said, is such that " * * * while the former [plaintiff corporation's right to sue] is strictly construed so that exclusion from access to the courts of the state requires a strong showing that the statute has been violated, the latter [service of process on the corporation] is liberally construed since otherwise citizens of a state would be forced to resort to another jurisdiction in order to maintain suits against foreign corporations as to matters arising out of transactions had within the state." Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 201 F.2d 233, at page 236. The 1950 Amendment, adding § 3471(5) (d), was a way out of this dichotomy, and the results which frequently seemed harsh and frustrating to the mutual policies of keeping courts open to plaintiffs and corporations amenable to local process. For this amendment introduced a new standard, and avoided

**2.** R. J. Brown Co. v. Grosjean, 1938, 189 La. 778, 180 So. 634; Quaker Hill, Inc. v. Guin, La.App., 1957, 95 So.2d 370; Reynolds Metal Co. v. T. L. James & Co., La.App.1954, 69 So.2d 630; Proctor Trust Co. v. Pope, La.App.1943, 12 So. 2d 724; National Pumps Corp. v. Bruning, La.App.1941, 1 So.2d 320; Norm Advertising, Inc. v. Parker, La.App.1937, 172 So. 586.

And see especially J. R. Watkins Co. v. Goudeau, La.App.1953, 63 So.2d 161, and

J. R. Watkins Co. v. Stanford, La.App. 1951, 52 So.2d 325, reaching diametrically opposite results on the same local distribution sales contract.

**3.** Harnischfeger Sale Corp. v. Sternberg Co., 1934, 179 La. 317, 154 So. 10; Calcote v. Century Indemnity Co., La.App. 1957, 93 So.2d 271; Johnson v. El Dorado Creosoting Co., La.App.1954, 71 So. 2d 613; Schultz v. Long Island Machinery & Equipment Co., La.App.1937, 173 So. 569.

the disadvantage of the old with its unsatisfactory reciprocal exclusions.

## VI.

■ Bound as we are (under Erie restraints) to the law as declared by the highest appellate court which has spoken, unless there is compelling reason to anticipate that the very highest state court will repudiate such holding, Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 177–178, 61 S.Ct. 176, 85 L.Ed. 109; Six Companies of California v. Joint Highway District No. 13, 1940, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114, this purpose of the 1950 amendment is spelled out for us in Calcote v. Century Indemnity Co., La.App.1957, 93 So.2d 271, 283. This amendment, the Court said, "was to permit Louisiana to capitalize on the full potential of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and permit the Courts of this State to entertain jurisdiction in suits against foreign corporations actually doing *some* business in the state, even though such business would not have subjected the corporation to the taxing power of the State, or forced it to apply for a license here, as pointed out by Dr. McMahon [4] in his comments under (LSA) R.S. 13:3235, Vol. 7, page 11." [5] (emphasis in original)

## VII.

■ Since, as we hold, the evident purpose of the 1950 Amendment was to broaden the field of foreign corporations amenable to local suit, we must determine the state question whether this suit is a "proceeding on a cause of action resulting from or relating to such acts performed in" Louisiana. That this is wholly a state, not a Federal, question is clearly established by Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, which holds that a forum state may, without violating Federal Constitutional principles, provide for service of process on amenable foreign corporations on causes of action unrelated to and arising wholly outside of the forum state.

On this question the 1950 Amendment does not speak in terms of a cause of action arising in Louisiana. It need not be a Louisiana cause of action. It must, however, be a Louisiana transaction as one "resulting from or relating to" the acts performed in Louisiana. For our present purposes we may assume that this was meant substantially to codify the requirement of Staley-Wynne Oil Corp. v. Loring Oil Co., 1935, 182 La. 1007, 162 So. 756. This is so because the United States Supreme Court, recognizing this Louisiana principle that its service of process statutes would not apply to "a cause of action arising wholly outside and wholly unconnected with any act or business of the corporation within the state," nevertheless held in Louisville & N. R. Co. v. Chatters, 1929, 279 U.S. 320, 325, 49 S.Ct. 329, 330, 73 L. Ed. 711, that injuries sustained in Virginia by a Louisiana citizen, a through passenger on an interstate ticket pur-

4. Dr. Henry G. McMahon is Dean of the Law School, Louisiana State University. His comments relative to Section 13:3471, at § 3235, 7 L.S.A.Rev.Stat. p. 11 (1951), see preface, iv, vi, vii, substantially copied in the Calcote opinion cited in the text, are based in part upon the official Reporter's Notes of the Louisiana State Law Institute proceedings in conjunction with the Revision Project. We leave to Louisiana to determine under a civil law system the relative standing of like words by a scholar or a court. See Daggett, Dainow, Hebert and McMahon, "A Reappraisal Appraised: A Brief for the Civil Law of Louisiana," 12 Tulane L.Rev. 12, 15–21.

5. In doing so Louisiana has only followed the obvious pattern pursued by other states who seek to exploit the full permissible advantage of the International Shoe concept. See, for example, the Illinois nonresident out of state service of process statute declared valid by us in Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83; Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673. And see also the extensive collection of material in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 1959, 265 F.2d 768.

chased in New Orleans from the non-resident railroad's local agent, created a cause of action arising out of its corporate acts within the State of Louisiana. It was therefore "a cause of action * * * arising out of an obligation incurred within the state although the breach occurred without." 279 U.S. at page 329, 49 S.Ct. at page 322.

Putting to one side whether the delivery of the ticket makes Holmes an agent upon whom service can be had, it is uncontradicted here that what happened in Chatters is precisely what occurred in our case. Mrs. Stanga purchased her passage contract in New Orleans from a person authorized to execute and deliver it and receive the payment in exchange therefor. There it was a railroad ticket with the injury resulting later from a defective screen. Here it was a steamship passage ticket with the injury resulting from a faulty or unseaworthy ladder (stairway). As to each, it would be proper to say that "the cause of action here asserted is one arising out of a contract for transportation, evidenced by the through ticket sold * * * in New Orleans and accepted by the [carrier] for transportation over its line. * * * It was out of this action within the state [of Louisiana] that the present obligation of the [carrier] arose, although the alleged breach of it occurred elsewhere." 279 U.S. 327, 49 S.Ct. 331. It should be emphasized, however, that this case is relevant only to the factor of "resulting from or related to" as used in the 1950 Amendment. It is of no significance on the other matters of agency, business activities, etc.

Of course this is but a reflection of the Maritime Law. For it is the contract of carriage as a water-borne passenger which gives rise to the high degree of care exacted of a carrier of passengers whether stated in terms of negligence or unseaworthiness. Robinson, Admiralty 549–561 (1939). It was this contract creating the relationship of ship and passenger, sold, delivered and consummated in New Orleans, which set the whole thing in motion.

## VIII.

This leaves then the state question whether McCormick's acts constitute "engaging in business activities." In the final analysis this state question and the Federal question of constitutional validity blend into one. This is so because Louisiana did not intend for the term "has engaged in business activities in this state through acts performed * * in this state" to exceed in grasp the reach of the Federal Constitution. At the same time there is no indication, other than the intrinsic limitation of a cause of action resulting from or relating to Louisiana acts, that Louisiana purposed to stop short of that Constitutional boundary. But whether the two coincide exactly or overlap in part, we need, and do, not decide.

## IX.

It is here where our differences arise. Chief Judge HUTCHESON and Judge CAMERON are of the view that the activities in Louisiana do not bring these defendants within the 1950 amendment as interpreted by Louisiana courts. That Act, note 1, supra, requires, as pointed out above, substantial record showing not only that the foreign corporation (1) "has engaged in business activities in this state," but that such must have been done (2) "through acts performed by its *employees* or *agents* in this state." They do not need to determine whether qualitatively or quantitatively factor (1) is satisfied as the evidence, in their view, is insufficient on (2). Holmes was clearly not an "employee" either of Eastern or McCormick. Holmes' function was limited. It was more like a broker soliciting patronage from all prospective travelers going anywhere on the globe using transportation facilities of all kinds and of all ownerships. The activity done by Holmes, even though assumed to be sufficient on factor (1), is inadequate to satisfy the

statute, as it was not done by Holmes as *agent* or employee.

Judge BROWN disagrees for reasons set forth next, in part X, which constitutes his dissent.

## X.

Judge BROWN is of the view that the record amply supports the service of process on the requisite factors of (1) business activities by Eastern and McCormick, and (2) through Holmes as agent.

As to the state question, it may be assumed until Louisiana authoritatively declares otherwise, that to engage in business activities requires a certain substantial quality and quantity. That certainly is true here. The facts are uncontradicted that Holmes acted for McCormick during 1957 and during the preceding five years. In 1957 Holmes solicited, booked, confirmed, issued and delivered 21 separate passage contracts on behalf of McCormick. It collected for McCormick and transmitted, less commissions, $8,000 to $9,000. The business done during the other five years was substantially the same as in 1957.

And in this context of quantity the *quality* of the acts of Holmes has dominant significance. For Holmes was not merely to solicit and pass onto Eastern requests for space from interested travelers. Holmes had, and exercised, authority on behalf of *McCormick* to *bind* McCormick. This was not the case of the order being accepted at the home office of the foreign corporation with the acts of the local forum solicitor all being conditioned on later acceptance.

Here the identity and suitability of the passenger was in fact left to Holmes. What Eastern passed on was availability and allocation of space. Upon confirmation from Eastern that physical space was available for the desired voyage, Holmes then executed the formal contract on behalf of McCormick, delivered it on behalf of McCormick, and collected and remitted the passage money fares. Indeed, the passage contract does not stop with the express recitation that Holmes executes it as agent for McCormick. The contract by its terms is expressly made for the benefit of the agent as well.[6]

The distinction between mere solicitation subject to home office acceptance and the power of the local soliciting agent to enter into binding contracts has long been recognized by Louisiana.[7] Indeed, the lack of power to bind has been described as "the crucial factor in the case," *Reynolds Metal Co. v. T. L. James & Co.*, La.App.1954, 69 So.2d 630, 634. The Supreme Court in *People's Tobacco Co. v. American Tobacco Co.*, 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, in passing upon the validity of process under a predecessor Louisiana statute, and contrasting its earlier decision of *International Harvester Co. of America v. Commonwealth of Kentucky*, 1914, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, likewise emphasized the decisive importance of lack of authority to bind the nonresident principal. This is generally regarded as a factor of great importance. 20 C.J.S. Corporations § 1920e(8) (1940). Louisiana is in accord with this treatment, *Norm Advertising, Inc. v. Barker*, La.App.1937, 172 So. 586, 589.

---

6. Clause 20 of the contract provided:
   "Where the term 'Carrier' is used herein it shall mean and include the vessel and tenders and each its owners, operators and charterers. The masters, agents, brokers, officers and crew of the vessel and of the carrier shall have the benefit of all of the terms and conditions of this contract. * * *."

7. State v. Best & Co., 1939, 194 La. 918, 195 So. 356; Graham Mfg. Co. v. Rolland, 1939, 191 La. 757, 186 So. 93; State v. Read & Nott, 1934, 178 La. 530, 152 So. 74; Quaker Hill, Inc. v. Guin, La. App.1957, 95 So.2d 370; Reynolds Metal Co. v. T. L. James & Co., La.App.1954, 69 So.2d 630; J. R. Watkins Co. v. Stanford, La.App.1951, 52 So.2d 325; Norm Advertising, Inc. v. Parker, La. App.1937, 172 So. 586.

The business done in Louisiana was not sporadic or isolated or nonrecurring. McCormick actively sought business in Louisiana through regular local advertising and through the execution and delivery of passage contracts by Holmes and others. The arrangement it made with Holmes provided an assurance that persons in the New Orleans area whose interest in Caribbean travel on McCormick's ships had been stimulated could be adequately served by local people having standing and reliability. McCormick was in the business of selling and furnishing transportation for passengers on cruises. It could not operate passenger vessels without passengers. It could get passengers only by selling passage contracts. The lifeblood of its business was the solicitation of travelers and the making of passage contracts. Holmes did both. And for both, Holmes was armed with express authority to execute and deliver in McCormick's name and on its behalf the contracts indispensable to its successful operation. McCormick therefore certainly "engaged in business activities in" Louisiana through "acts performed by its * * * agents in" Louisiana.

## XI.

In view of the Court's action on the insufficiency of the status of Holmes as "agent" (factor (2) in IX, above) Chief Judge HUTCHESON and Judge CAMERON do not get to the question of validity of the Louisiana statute or the instant service under the Federal Constitution, so they express no opinion on that phase. Consistent with his dissent, part X, supra, Judge BROWN must face the problem and does so in this part XI as his own opinion only.

These activities certainly satisfy Federal Constitutional requirements. The contact with Louisiana in the solicitation and execution of these contracts over a period of five years, in the arrangements for transportation of its citizens, and in the collection of fares, satisfied the Constitutional demand that there be "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,' " International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 159, 90 L.Ed. 95, supra. Since this litigation involves an occurrence which is the outgrowth of the contract creating the relationship of passenger and ship, it is further "sufficient for purposes of due process" since the suit is "based on a contract which had substantial connection with that State." McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223. And to the extent that Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, is thought to have recaptured some of the area surrendered in McGee, the facts here more than satisfy the "minimal contacts" delineated in that decision. 357 U.S. at page 251, 78 S.Ct. at page 1238. It is only "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." 357 U.S. at page 253, 78 S.Ct. at page 1240. Eastern on behalf of McCormick sought out Holmes. It clothed Holmes with authority to make binding contracts. It furnished contract forms to Holmes. It confirmed space to Holmes for use of passengers to whom passage contracts would be delivered by Holmes. It authorized Holmes to collect large sums of money for it and required Holmes to transmit funds to it. It looked upon Louisiana and New Orleans as a likely source of traffic and a safe and attractive place in which to trade.

McCormick has quite naturally expressed great anxiety that upholding the validity of this service will be a carte blanche approval of like service on all travel agents, travel bureaus, travel brokers, or on railroads, bus companies or airlines whose ticket salesmen sell tickets for transportation wholly outside the forum state. The opinion in this case does not have any such far-reaching purpose or effect. In saying this the

writer purposely refrains from trying to single out significant variations or distinctions. The results of any such effort are unrewarding and the factors have all been well catalogued.[8]

This, like nearly every other serious problem, calls for careful weighing and selection and judgment in the process of adjudicating. Adjudicating is not the mechanical advocation of mechanical rules. To find certainty either to sustain or attack service of process, in the name or title or tag given to a person or an activity is an unreal goal. For as Justice Holmes tells us "certainty generally is illusion, and repose is not the destiny of man." And this is but an echo of Louisiana's caution: "Application of the proper rule depends upon the facts in each particular case,—so much so, in fact, that it is difficult to say that anyone of the cited decisions may be said to be complete authority for a ruling in the instant case." Johnson v. El Dorado Creosoting Co., La.App.1954, 71 So.2d 613, 617.

### XII.

■ But while the Court's conclusion in IX, supra, does affirm the District Court's action in setting aside the service of process made herein on Holmes, it

does not necessarily follow that the final order of dismissal was proper at this stage.

The case was one within the jurisdiction of the District Court as diversity and requisite amount in controversy existed. There may be other ways to effect valid service of process, e. g., attachment, see LSA–Rev.Stat. 13:3952; Normann v. Burnham's Van Service, La.App.1954, 73 So.2d 640, or perhaps, under some circumstances, on the Secretary of State. Of course, what those means are, or their availability in this case is not before us. Nor was it before the District Court.

There may well come a time in which the Trial Court, in the administration of the affairs of the Court, sees that there is simply no reasonably conceivable means of acquiring jurisdiction over the person of a defendant. When that time comes it may be proper to dismiss the cause. But, on this record, relating to one single attempted service of process, that point has not yet been reached.

### XIII.

The result is that the service on Holmes was ineffective and the order setting aside that service is affirmed; but the order of dismissal is reversed

---

8. See, for example, the extensive annotation of "Foreign corporations—serving process on," 113 A.L.R. 9–172. See especially, as to connecting or associated carriers, p. 59; ticket agents, p. 61; salesmen or soliciting agents, pp. 88–96; railroad or steamship soliciting agent, freight or passenger agent, pp. 102–108; ticket agent, station agents, express agents, p. 122; and railroad trainmen, p. 123.

See also 20 C.J.S. Corporations § 1920 (1940), and 23 Am.Jur., Foreign Corporations, § 538 (Connecting or Associated Carriers), § 549 (Salesmen or Soliciting Agents) and § 550 (Agent of Transportation or Telegraph Company) (1939).

Illustrative of the application of these generally accepted principles with respect to steamship and similar operations are the following cases cited by the plaintiffs to sustain service: Johannesen v. Gulf & South American Steamship Co., D.C.S.D.N.Y.1954, 126 F.Supp. 664; Allegue v. Gulf & South American S. S. Co., D.C.S.D.N.Y.1952, 103 F.Supp. 34; Arpad Szabo v. Smedvig Tankrederi, A.S.,

D.C.S.D.N.Y.1951, 95 F.Supp. 519; Scholnik v. National Airlines, Inc., 6 Cir., 1955, 219 F.2d 115; Satterfield v. Lehigh Valley R. Co., D.C.S.D.N.Y.1955, 128 F.Supp. 669; London's, Inc. v. Mack Shirt Corp., D.C.D.Mass.1953, 114 F. Supp. 883; Transmirra Products Corp. v. Magnavox Co., D.C.S.D.N.Y.1953, 110 F. Supp. 676; Healing v. Isbrandtsen Co., D.C.S.D.N.Y.1952, 109 F.Supp. 605; Ruffner v. Cunard S.S. Co., 94 W.Va. 211, 118 S.E. 157. The following reported decisions are urged by McCormick to sustain the District Court's holding of invalid service: Ashcraft-Wilkinson Co. v. Compania De Navegacion Geamar, S.R. L., D.C.S.D.N.Y.1953, 117 F.Supp. 162; Gertsenstein v. Peninsular & Oriental Steam Navigation Co., 1950, 202 Misc. 838, 113 N.Y.S.2d 360; Kenny v. Alaska Airlines, Inc., D.C.S.D.Cal.1955, 132 F. Supp. 838; Ericksson v. Cartan Travel Bureau, Inc., D.C.D.Md.1953, 109 F. Supp. 315; Pike v. New England Greyhound Lines, Inc., D.C.D.Mass.1950, 93 F.Supp. 669.

and the cause remanded for further consistent proceedings.

Affirmed in part, reversed and remanded in part.

CAMERON, Circuit Judge (concurs in the result).

JOHN R. BROWN, Circuit Judge, dissenting in part.